20073

Marianne FOREMAN and Sandra Joan Foreman, Respondents, v. JACKSON MINIT MARKETS, INC., and Munford, Inc., Appellants.

(217 S. E. (2d) 214)

*Messrs. Nelson, Mullins, Grier & Scarborough,* of Columbia, *for Appellants,* cite:

*Messrs. Griffin & Howard,* of Greenville, *for Respondents,* cite:

August 4, 1975.

LEWIS, Justice:

This Workmen's Compensation case involves a determination of the method to be used in computing benefits due to the dependents (wife and minor daughter) of a deceased employee. The specific issue to be decided is whether or not wages earned concurrently from two separate employers are to be combined in determining the employee's "average weekly wage" under the provisions of Section 72-4 of the 1962 Code of Laws. The Industrial Commission and the lower court held that it was proper to combine such wages. The employer-carrier appeals from that decision. We affirm.

The facts are not in dispute. On April 9, 1973, Jackson Minit Markets, Inc., a retail food store in Greenville, was robbed. During the robbery, Robert Foreman, an employee, was shot and as a result died on May 24, 1973.

The employee had been working an average of 71.13 hours per week. He worked for appellant an average of 31.13 hours per week at $2.00 per hour, operating the cash register and stocking shelves. He also worked 40 hours per week at $2.30 per hour for Pearce-Young-Angel Company, a wholesale food distributor, as a forklift operator. If the two incomes are combined in computing the average weekly wage, the maximum applicable compensation rate will apply. If they are not combined, the average compensable wage will be considerably less.

The present inquiry involves the construction of Code Section 72-4. The first paragraph of the Section gives four different methods which may be used to determine the av-

erage weekly wage of any employee. *Under the first,* the term "average weekly wages" means that the employee must have worked for the employer for a period of at least fifty-two weeks immediately preceding the injury so that his average weekly wage would be the total of his earnings for such period divided by fifty-two. *Under the second,* if the employee lost more than seven consecutive calendar days at one or more times during the fifty- two weeks, although not in the same week, then the earnings for the remainder of the fifty-two weeks would be divided by the number of weeks remaining after the lost time was deducted. The *third* method provides that when the employment prior to the injury extended over a period less than fifty-two weeks, the total earnings would be divided by the total number of weeks or parts thereof, provided results fair and just to both parties will be obtained. *Under the fourth,* where by reason of a shortness of time of the employment or the casual nature of terms thereof, it is impracticable to compute the average weekly wages as defined in this section, the average weekly wage must be determined with regard to that of a person of the same grade and character employed in the same class of employment in the same locality.

The Legislature recognized that there would be exceptional cases in which the methods outlined in Section 72-4 would be unfair and provided in the second paragraph of the Section as follows:

"But when for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury."

The quoted proviso of Section 72-4 authorizes the Industrial Commission to use some other method for determining average weekly wages, when the methods previ-

ously set forth produce "unfair" results "either to the employer or employee." It is evident that the aim in calculating a wage base is to fairly approximate the employee's earning capacity, and that method may be resorted to which "will most nearly approximate the amount which the injured employee would be earning were it not for the injury."

We considered Section 72-4 in *McCummings v. Anderson Theatre Co.,* 225 S. C. 187, 81 S. E. (2d) 348, and the effect of concurrent employment in determining average weekly wages under the statute. The order of the lower court in that case affirmed on appeal and correctly analyzed the application of the several methods set forth in the statute to the present factual situation. The court there reasoned:

"It is apparent that methods one, two and three are confined to the same employment, but the field is extended in classification number four. Further extension is granted in number five, when for exceptional reasons it would be unfair to compute the wage received in the same employment or same class of employment. The paragraph says 'such other method' may be resorted to 'as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.' There are only two ways to do this, first, by an arbitrary increase of the wage, and second, by combination of the average wage received in the employment in which the employee received his injury with the average wage received from other regular employment. The General Assembly did not intend the first 'such other method,' and it logically follows that the second is to be the rule."

The dependents are entitled to compensation on the basis of the employee's earning capacity. Certainly the employee's earning capacity at the time of the accident was the total of his wages from the two jobs. In this case, the use of any of the four, enumerated methods

would result in compensating the dependents at a rate based on considerably less than the employee's actual proved earning capacity. This result would be unfair.

Appellant argues, however, that combining wages from separate employments is unfair to the employer-carrier in that he must pay compensation for a loss of earnings on which he has not collected a premium. This argument overlooks the purpose of the Workmen's Compensation Act and its basic concepts, upon which the issue of fairness must be resolved. Larson adequately answered this contention in his work on Workmen's Compensation Law, Section 60.31:

"What this line of argument overlooks . . . is that fairness to the employee and fairness to the employer-carrier are not symmetrical, and cannot be judged by the same standards. To this one employee, this one loss is everything, he has nothing against which to offset it. To the employer, and even more to the carrier, this is just one case among many. The rule operates impartially in both directions. Today this employer-carrier may be saddled with a slight extra cost; tomorrow the positions may be reversed, and the employer-carrier will be completely relieved of the cost of an injury to one of its employees in a concurrent-employment situation, when it happens to be the other employment in which the injury occurs. This is the essence of the concept of spreading the risk in a system like Workmen's Compensation."

Appellant also argues that, since the commission failed to specify any "exceptional reasons" for refusing to apply one of the methods enumerated for determining average weekly wages, it was improper to use any other method in making such determination. The following from the order of the lower court adequately disposes of this argument:

"The commission, at least by inference, found 'exceptional reason' as required by the statute, in that the method

of computation urged by the employer of using only the wages earned from it while engaged part-time, would not fairly reflect the earnings of a man who, with both employers, actually engaged in 70-odd productive hours each week . . . it is obvious that the mere statement of the preceding sentence yields the 'exceptional reason' in basic consideration of the deceased's work productivity. . . ."

The language of the statute indicates more concern with the unfair results from the use of the enumerated methods than to "exceptional reasons" which cause the unfairness. The fact alone that the method of combining the earnings from both employments is the only one which will result in adequate compensation for lost earning capacity is sufficient "exceptional reason" to apply that method.

The contention is also made that the portion of the first paragraph of Section 72-4, which provides that the average weekly wage should be computed from "the earnings of the injured employee in the employment in which he was working at the time of the injury," is a limitation upon the entire section and that only those earnings should be considered. This contention was rejected in *McCummings v. Anderson Theatre Co., supra,* 225 S. C. 187, 81 S. E. (2d) 348, and properly so. There is nothing in the statute to indicate that only wages from a particular employment must be used. The language of the proviso plainly states that any other method of computing average weekly wages may be used which will fairly compensate the employee or his dependents. The proviso is to be used when the other methods fail to produce fair results and is a separate and distinct alternative to those previously set forth in the statute.

Appellant has argued the possible application of other methods for determining average weekly wages in cases involving earnings from concurrent employments, particularly the rule apparently adopted by a majority of the courts in other jurisdictions. This "majority rule" is

discussed in Larson's Workmen's Compensation Law, Section 60.31. It allows the combining of earnings from concurrent employment only if the jobs are *related* or *similar*. Some courts have held that the employee's duties must be similar; some have held that the business of the employers must be similar; and some discuss the similarity of the risk involved. While we have great respect for the decisions of the courts cited to sustain this majority rule, we simply find no basis for such distinctions under the South Carolina statutes.

The Industrial Commission and the lower court correctly construed Section 72-4 and properly applied it to the facts of this case.

The judgment is accordingly affirmed.

Moss, C. J., LITTLEJOHN and NESS, JJ., and BRAILS-FORD, A. A. J., concur.