644 S.E.2d 784

**Cally R. FORREST, Jr., Respondent,**

**v.**

**A.S. PRICE MECHANICAL and O'Steen Adjusting Services, Appellants.**

**No. 4227.**

Court of Appeals of South Carolina.

Heard March 6, 2007.
Filed April 2, 2007.
Rehearing Denied May 17, 2007.

304

Duke K. McCall, Jr., Rebecca H. Zabel and Zandra Johnson, all of Greenville, for Appellants.

Belinda Ellison, of Lexington and James B. Richardson, of Columbia, for Respondent.

KITTREDGE, J.:

In this workers' compensation case, Cally R. Forrest, Jr. sustained injuries from a work-related accident while employed by Appellant A.S. Price Mechanical.[1] Appellant concedes that Forrest is entitled to lifetime medical and workers' compensation benefits. Appellant assigns error to the Work-

---

1. The employer's carrier, O'Steen Adjusting Services, is also an appellant.

ers' Compensation Commission's computation of Forrest's compensation, the finding that Forrest has reached maximum medical improvement (MMI), and the admission of Forrest's vocational expert's report. We affirm.

## I.

With the exception of four semesters spent at Clemson University, Forrest was employed full-time since graduating from high school in 1995, usually working multiple jobs.[2] As a high school student, Forrest worked regularly, including seasonal, full-time work with Monetta Peach Packers. He continued seasonal employment with Monetta Peach Packers until his injury on May 26, 2001. During the remaining months of the year, Forrest worked for several employers, including Appellant A.S. Price Mechanical, Price's Metal Shop, Gibson Construction Company, and J.E. Oswalt & Sons ("Oswalt").

After leaving Clemson in December of 1998, Forrest began working full-time for Larry Price at Price's Metal Shop.[3] Forrest also worked for Appellant on the weekends. In the fall of 1999, Forrest's job with Appellant changed from part-time to full-time, and he began working for Larry Price only part-time. When work with Appellant was slow, Forrest would work for Gibson Construction Company. Eventually, his job with Gibson Construction Company became full-time, and he worked for Appellant only part-time. By the start of the 2000 peach season, the specific construction Forrest was working on was completed with Gibson Construction Company, and Forrest once again began his seasonal work with Monetta Peach Packers.

At the end of the peach season in 2000, Forrest began working full-time for Oswalt and part-time with Appellant. When the peach season began in 2001, he left his job at Oswalt and went back to Monetta Peach Packers. Forrest testified he intended to go back to work for Oswalt at the end of the 2001 peach season. He further noted that the owner of

2. Forrest testified that although he received a scholarship to attend Clemson, he left after two years because he wanted to work full-time and get married.

3. Larry Price is Forrest's father-in-law and Allen Price's uncle. Allen Price is the owner of Appellant A.S. Price Mechanical.

Oswalt and one of the owners of Monetta Peach Packers were friends and knew of his intentions.

Forrest was injured during the 2001 peach season when he fell from a roof while working part-time for Appellant. Forrest was twenty-four years old at the time of the accident. The injuries rendered him a paraplegic.

Appellant agreed to pay Forrest workers' compensation at a rate of $490.00. This amount reflected Forrest's combined wages from Appellant and Monetta Peach Packers.

The single commissioner subsequently adjusted the compensation rate to $532.72. This compensation rate represented Forrest's average weekly wage from January 1, 2001 to May 26, 2001, while working for Appellant, Monetta Peach Packers, and Oswalt. The Commission adopted the order of the single commissioner. The circuit court held the Commission's findings were supported by substantial evidence and affirmed.

## II.

The Administrative Procedures Act establishes the standard of review for decisions by the South Carolina Workers' Compensation Commission. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). "In workers' compensation cases, the Full Commission is the ultimate fact finder." *Shealy v. Aiken County,* 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). This court reviews facts based on the substantial evidence standard. *Thompson v. S.C. Steel Erectors,* 369 S.C. 606, 612, 632 S.E.2d 874, 877 (Ct.App.2006). Under the substantial evidence standard, the appellate court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact. S.C.Code Ann. 1–23–380(A)(5) (Supp.2006). The appellate court may reverse or modify the Commission's decision only if the claimant's substantial rights have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. *Id.* "Substantial evidence is not a mere scintilla of evidence nor evidence viewed from one side, but such evidence, when the whole record is considered, as would allow reasonable minds to reach the conclusion the Full Commission reached." *Shealy,* 341 S.C. at 455, 535 S.E.2d at 442.

## III.

■ Appellant argues the circuit court erred in affirming the Commission's computation of Forrest's average weekly wage of $532.72. First, Appellant asserts that the doctrines of estoppel and laches preclude Forrest from asserting a different wage than the parties agreed upon. Next, Appellant objects to the inclusion of Oswalt as an employer in the rate computation, and maintains that Forrest was not employed with Oswalt at the time of his injury. Appellant contends any wages earned as a result of his previous employment with Oswalt are irrelevant per section 42–1–40 of the South Carolina Code (Supp.2006). Finally, Appellant argues there are no exceptional circumstances justifying an adjustment or computation of Forrest's average weekly wage in a method other than that employed originally.

■ At the outset we hold that the doctrines of estoppel and laches do not preclude the Commission from adjusting the average weekly wage prior to the administrative body's final determination. Appellant's argument stems from the fact that Forrest's initial compensation rate was $300 per week until he requested that this rate be increased to include wages earned from Monetta Peach Packers. Appellant states it agreed to the new calculation ($490 per week) and filed a new Form 15 with the Commission in exchange for Forrest agreeing to withdraw his request for a hearing. Forrest filed a new Form 19 with the Commission confirming his acceptance of the rate, and Appellant maintains it relied to its detriment on Forrest's promise of acceptance.

The circuit court correctly held that neither a Form 15 nor a Form 19 is a final judgment. Section 42–17–10 of the South Carolina Code (1985) allows the Commission to adjust a claimant's compensation rate after the filing of the claim, even when the parties agree to the preliminary compensation rate. Section 42–17–10 provides: "All such agreements [between the claimant and employer as to rate of compensation] shall be subject to adjustment and correction as to the compensable rate if subsequent to filing with the Commission it is determined that such rate does not reflect the correct average weekly wage of the claimant." Moreover, Appellant has failed to establish any detrimental reliance.

On the merits, we disagree with Appellant's contention that the Commission erred in including Oswalt as an employer in Forrest's average weekly wage computation. Section 42–1–40 of the South Carolina Code (Supp.2006) defines "average weekly wage" for the purposes of computing compensation and sets forth four different methods of calculation.[4] The methods for calculating average weekly wage explained in section 42–1–40 have been interpreted by our courts to implement the "usual" job situation with one employer. *See Foreman v. Jackson Minit Markets, Inc.* 265 S.C. 164, 167, 217 S.E.2d 214, 215 (1975) (summarizing the four different methods of calculating average weekly wage in the predecessor to section 42–1–40). However, section 42–1–40 further provides that when exceptional reasons make one of the standard approaches unfair to either the employer or employee, "such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." We note that exceptional circumstances have been found where an employee has multiple employers at the same time. *See, e.g. Brunson v. Wal–Mart Stores, Inc.,* 344 S.C. 107, 111, 542 S.E.2d 732, 734 (Ct.App.2001) (listing several

4.  Section 42–1–40 provides as follows:

    "Average weekly wages" means the earnings of the injured employee *in the employment in which he was working at the time of the injury* during the period of fifty-two weeks immediately preceding the date of the injury.... "Average weekly wage" must be calculated by taking the total wages paid for the last four quarters immediately preceding the quarter in which the injury occurred ... divided by fifty-two or by the actual number of weeks for which wages were paid, whichever is less. When the employment, prior to the injury, extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, as long as results fair and just to both parties will be obtained. Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impracticable to compute the average weekly wages as defined in this section, regard is to be had to the average weekly amount which during the fifty-two weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.
    (Emphasis added.)

cases where multiple employment has been sufficient to justify exceptional circumstances).

Appellant argues section 42–1–40 requires that the wage being earned at the time of the injury be the wage that controls the compensation rate. On the date of the injury, Appellant correctly points out that Forrest only worked for Appellant and Monetta Peach Packers.

The Commission found that the following "exceptional circumstances" justified deviation from the usual statutory method of average weekly wage computation: (1) Forrest's young age of twenty-four years at the time of injury;[5] (2) Forrest's demonstration of the interest, aptitude, ability, work ethic, and work history to be both a welder or maintenance worker and an employee who had worked year-round with multiple employers; (3) the fact that Forrest worked for Monetta Peach Packers during the peach season for several months each year since he was fifteen and had worked for two or three additional employers to complete his annual earnings and year-round employment; (4) the severity of Forrest's injury; and (5) the fact that Appellant knew that Forrest regularly worked full-time and part-time for multiple employers.

■ The circuit court did not err in affirming the Commission.[6] The Commission acted within its broad discretion in determining that exceptional circumstances existed. In finding exceptional circumstances in other cases, this court has reasoned that "[section 42–1–40] provides an elasticity or flexibility with a view toward always achieving the ultimate objective of reflecting fairly a claimant's probable future earning loss." *Sellers v. Pinedale Residential Ctr.*, 350 S.C. 183, 191, 564 S.E.2d 694, 698 (Ct.App.2002). "Moreover, it is well established that the objective of wage calculation is to arrive

---

5. The Commission's order states Forrest was twenty-three at the time of injury. Forrest's testimony and birth date (May 22, 1977) show, however, that Forrest turned twenty-four four days prior to his accident.

6. We recognize the difficulty with the factor concerning the severity of a claimant's injury and the implication of a sliding scale relationship between injury and determination of average weekly wage. *But see Sellers v. Pinedale Residential Ctr.*, 350 S.C. 183, 191, 564 S.E.2d 694, 699 (Ct.App.2002) (finding the extent of Sellers' injury was a factor warranting a ruling of exceptional circumstances).

at a fair approximation of the claimant's probable future earning capacity." *Elliott v. S.C. Dep't of Transp.*, 362 S.C. 234, 238, 607 S.E.2d 90, 92 (Ct.App.2004). "Disability reaches into the future, not the past; loss as a result of the injury must be thought of in terms of its impact on probable future earnings." *Id.* (citing *Bennett v. Gary Smith Builders*, 271 S.C. 94, 98–99, 245 S.E.2d 129, 131 (1978)).

Forrest's work history demonstrates a laudable, strong work ethic. There is no reason to second-guess the Commission's finding that, were it not for his injury and subsequent paraplegia, Forrest would be working full-time and part-time, year-round for several different employers because of his commitment to seasonal employment with Monetta Peach Packers. To arrive at a fair average weekly wage in this case, it was reasonable for the Commission to examine Forrest's actual work history. The Commission looked to the period from January 1, 2001 until the date of Forrest's injury on May 26, 2001—a twenty-one-week period. This time period reflected Forrest's true earnings and thus a fair estimation of his future earning capacity. The rate of compensation determined by the Commission is consonant with the statutory scheme, as well as a fair rate to both Forrest and Appellant.

Appellant attempts to distinguish this case from *Sellers v. Pinedale Residential Ctr.*, 350 S.C. 183, 564 S.E.2d 694 (Ct. App.2002), a case relied upon by the Commission. This case is not distinguishable in any meaningful way that Appellant urges. In *Sellers*, a case where exceptional circumstances were found to exist, a sixteen-year-old became a paraplegic as a result of a job injury. 350 S.C. at 186, 564 S.E.2d at 696. The Commission noted the similarity between the two claimants (Sellers and Forrest) in that they were both of a young age and regularly worked three jobs. Appellant contends in *Sellers* the claimant demonstrated that he planned to become a master electrician, which warranted the Commission increasing his compensation rate to that of an electrician. Unlike the claimant in *Sellers*, Appellant argues Forrest has made no such showing. Appellant contends Forrest "has voluntarily assumed a pattern of work that is somewhat unconventional[.]" By conceding Forrest's "pattern of work," Appellant in effect lends support to the Commission's reliance on Forrest's true work history. This reliance on Forrest's demonstrated

work history supports the Commission's finding of exceptional circumstances. If anything, Forrest presents a stronger case for a finding of exceptional circumstances than Sellers did.

As for the argument that Forrest's testimony about intending to return to work for Oswalt is too speculative to determine future earnings, we find substantial evidence supports the Commission's findings. Forrest's future work plans, interrupted by his injury, may be reasonably gauged by his work history.

Perhaps Forrest's strong work ethic is "unconventional," but that is no reason to discount his actual work history and earnings. The law mandates the Commission evaluate each case (including a claimant's average weekly wage) in accordance with its particular facts. The quest here is one for truth in light of the particular case, not by resort to an employer's idea of what is "conventional" that can be advanced when an employer is up against a claimant with a solid work ethic and a demonstrable pattern of consistent work and earnings. Substantial evidence supports the Commission's determination of Forrest's average weekly wage.

## IV.

As for Appellant's remaining assignments of error, we affirm pursuant to Rule 220(b)(2), SCACR, and the following authorities: *Gadson v. Mikasa Corp.*, 368 S.C. 214, 224, 628 S.E.2d 262, 268 (Ct.App.2006) (noting that MMI is a factual determination left to the discretion of the Commission); *Dodge v. Bruccoli, Clark, Layman, Inc.*, 334 S.C. 574, 580–81, 514 S.E.2d 593, 596 (Ct.App.1999) (finding MMI "indicate[s] that a person has reached such a plateau that in the physician's opinion there is no further medical care or treatment which will lessen the degree of impairment[,]" while disability is the "incapacity because of an injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment"); *Fields v. Reg'l Med. Ctr. Orangeburg*, 363 S.C. 19, 25, 609 S.E.2d 506, 509 (2005) (noting the qualification of an expert witness and the admissibility of the expert's testimony are matters within the trial court's sound discretion); *Peterson v. Nat'l R.R. Passenger Corp.*, 365 S.C. 391, 399, 618 S.E.2d 903, 907 (2005) ("Defects in an expert

witness' education and experience go to the weight, not the admissibility, of the expert's testimony."); *Gadson*, 368 S.C. at 229, 628 S.E.2d at 270 (finding that the Commission acted within its discretion in allowing a certified rehabilitation counselor with a master's degree to render an opinion on employability).

## V.

For the reasons stated above, the order of the circuit court is

**AFFIRMED.**

ANDERSON and SHORT, JJ., concur.