693 S.E.2d 436

**Glenn BAZEN, Respondent,**

v.

**BADGER R. BAZEN COMPANY, INC., Employer and Legion Insurance Company in liquidation through S.C. Property and Casualty Insurance Guaranty Association, Carrier, Appellants.**

No. 4681.

Court of Appeals of South Carolina.

Heard Nov. 4, 2009.

Decided May 3, 2010.

Mark Davis Cauthen, of Columbia, for Appellants.

Steve Wukela, Jr., of Florence, for Respondent.

LOCKEMY, J.

In this workers' compensation action, Badger R. Bazen Company, Inc. and Legion Insurance Company (Carrier) appeal the circuit court's decision affirming the decision of the Appellate Panel of the Workers' Compensation Commission (Appellate Panel) to award Glenn Bazen (Claimant) certain workers' compensation benefits. We affirm.

## FACTS

Badger R. Bazen (Father) owned and operated Badger R.

Bazen Company, Inc. (Employer) in 2002.[1] Claimant and Father testified they entered into an oral employment contract. Under the contract, Claimant, who was living in Minnesota at the time, would return to South Carolina and work for Employer in exchange for $30,000 per year, a tank of gas per week, and use of a home owned by his parents as a free living arrangement. After Claimant began working for Employer, he sustained injuries while in the scope and course of his employment on February 15, 2002.

In his order addressing average weekly wages, the single commissioner found Father promised to pay Claimant $30,000 per year, or $2,500 per month, a tank of gas per week, and allow him to use a house and storage building free of charge. Relying on testimony, the single commissioner found Claimant's use of the home and storage facility to be an integral part of the parties' employment contract, not a mere fringe benefit as discussed in *Anderson v. Baptist Medical Center*, 343 S.C. 487, 541 S.E.2d 526 (2001).[2] The single commissioner thereafter determined Claimant's average weekly wage was $853.84 by concluding the fair rental value of the home was $1,200 per month and his agreed upon wage was $30,000 per year. Additionally, the single commissioner awarded Claimant $549.42 per week in temporary total disability benefits. Finally, the single commissioner determined Claimant was underpaid by $132.73 per week since February 15, 2005, the date of the accident, until October 31, 2005. Therefore, for a total of 193 weeks, the single commissioner ordered Employer to pay Claimant $25,616.89 as a lump sum back-payment for temporary total disability benefits.

Thereafter, Employer and Carrier applied for review of the single commissioner's findings to the Appellate Panel. Specifically, the parties argued the single commissioner erred in: 1)

---

1. At the time of the workers' compensation hearings, Father was retired.

2. *Anderson* cites case law that finds mileage deductions and employer contributions to union trust funds for health and welfare, pensions, and training are fringe benefits rather than "the actual sum paid to the employee as his wages...." 343 S.C. at 496, 541 S.E.2d at 530 (citing *Stephen v. Avins Const. Co.*, 324 S.C. 334, 347, 478 S.E.2d 74, 81 (Ct.App.1996)).

finding the use of the house, storage building, and land provided by Employer should be included in calculating Claimant's average weekly wage; 2) ruling it was immaterial that the house and building were not owned by Employer; 3) determining that Claimant was entitled to the maximum compensation rate of $549.42 for 2002; 4) finding Claimant was entitled to back-payments for temporary total disability benefits; and 5) failing to grant Employer credit for overpayment of temporary total disability payments. The Appellate Panel unanimously affirmed all of the single commissioner's findings of facts and conclusions of law. Thereafter, the circuit court affirmed the Appellate Panel's order. This appeal followed.

## STANDARD OF REVIEW

"The Administrative Procedures Act establishes the standard of review for decisions by the South Carolina Workers' Compensation Commission." *Forrest v. A.S. Price Mech.,* 373 S.C. 303, 306, 644 S.E.2d 784, 785 (Ct.App.2007) (citing *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981)). "In workers' compensation cases, the [Appellate Panel] is the ultimate fact finder." *Shealy v. Aiken County,* 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000) (citation omitted). This court reviews facts based on the substantial evidence standard. *Thompson v. S.C. Steel Erectors,* 369 S.C. 606, 612, 632 S.E.2d 874, 877 (Ct.App.2006). "Under the substantial evidence standard, the appellate court may not substitute its judgment for that of the [Appellate Panel] as to the weight of the evidence on questions of fact." *Forrest,* 373 S.C. at 306, 644 S.E.2d at 785 (citing S.C.Code § 1–23–380(A)(5) (Supp. 2006)). The appellate court may reverse or modify the Appellate Panel's decision only if the claimant's substantial rights have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence in the record. *Id.* at 306, 644 S.E.2d at 785–86. "Substantial evidence is not a mere scintilla of evidence nor evidence viewed from one side, but such evidence, when the whole record is considered, as would allow reasonable minds to reach the conclusion the [Appellate Panel] reached." *Shealy,* 341 S.C. at 455, 535 S.E.2d at 442.

## LAW/ANALYSIS

### I. Value of House as Part of Wage Contract

■ Employer and Carrier argue the circuit court erred in affirming the Appellate Panel's decision to include the value of the use of the house as part of Claimant's average weekly wage. Specifically, Appellants argue use of the residence was a gratuitous gift from Claimant's mother, and Claimant failed to present evidence in the record to substantiate that the residence was a specified part of a wage contract. In response, Claimant argues the circuit court correctly included the home's value as part of his weekly wage. We agree with Claimant.

Section 42–1–40 of the South Carolina Code (Supp.2009) defines "average weekly wage" as "the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury...." The average weekly wage can include allowances of any character when they are a specified part of his employment contract. *See* S.C.Code Ann. § 42–1–40 ("Whenever allowances of any character made to an employee in lieu of wages are a specified part of a wage contract they are deemed a part of his earnings."). *Anderson* directs: "[B]efore an allowance will be included in the average weekly wage calculation, it must (1) be made in lieu of wages, and (2) be a specified part of a wage contract." 343 S.C. 487, 495, 541 S.E.2d 526, 530 (2001). Here, we find there is substantial evidence of both.

In this case, Father's and Claimant's statements regarding an oral agreement are the sole evidence upon which we can rely to determine the components of their contract. Though there is no written contract, no conflicting testimony exists regarding the contract terms. We believe Father and Claimant presented ample and consistent testimony through depositions and hearings for us to affirm the finding that Claimant's oral wage contract was $30,000 per year, a tank of gas per week, and his rent-free living arrangement.

Specifically, Claimant testified in his deposition that his employment agreement consisted of "[t]hree things: free house; one tank of gas a week; $30,000[ ] a year." Additionally, Claimant testified, "[t]he house was part of my agreement with [Father] when I came back to work with him, and I

still live there." Father corroborated Claimant's testimony through deposition testimony and testimony before the single commissioner.

In his deposition, Father testified that he told Claimant he "would give him [30,000] a year, a house to live in[,] and a tank of gas a week." Father responded affirmatively when asked if Claimant had a guarantee of $2,500 per month in income "on top of the house and the taxes and the insurance and the gasoline...." Father's testimony remained consistent from his deposition to his hearing before the single commissioner. There, Father testified "I told him I would give him $2,500 a month, a tank of gas a week, and the house and little shop there." Father answered affirmatively when asked whether Claimant's compensation was $30,000 per year or $2,500 per month. Further, he testified: "[Claimant] would not have come home for just 2,500 a month without the house." When asked whether he ever charged Claimant rent for use of the house, Father responded "No. That was part of the deal for him to come home." Further, Father testified that Claimant had to sell his home in Minnesota in order to return to South Carolina, so Father felt he should "give him somewhere to stay as far as it was a package deal."

Because ample evidence in the record indicates Claimant's living arrangement was not merely a gift but part of his wage contract, we do not believe Appellant's gratuitous benefit argument has any merit. Therefore, we believe the circuit court did not err in affirming the Appellate Panel's decision to award Claimant the fair market value of the use of the house as part of Claimant's average weekly wage. Accordingly, we affirm the circuit court's decision.

## II. Rent Free Living

█ Employer and Carrier argue the circuit court erred in affirming the Appellate Panel's decision to include the rental value of Claimant's residence when he continued to live rent free in the residence after his employment ended, and he never ceased receiving this benefit. Appellants maintain that to include the rental value unquestionably confers a double benefit upon Claimant.[3] In response, Claimant argues the

---

3. Specifically, Appellants contend Claimant should have been awarded only $576.92 per week, which would have properly compensated him

contractual terms between the parties are factual determinations that are left exclusively to the Appellate Panel. Additionally, Claimant maintains his mother's conveyance of her property to Claimant was not compensation by Employer; therefore, Employer should not be entitled to a credit for the conveyance.

The issue of Claimant's living situation after the single commissioner's ruling and any double recovery he may or may not have received is not preserved for our review. Appellants did not raise this issue to the Appellate Panel after the single commissioner's ruling. In fact, Appellants first raised the double recovery argument to the circuit court on appeal. Therefore this issue is not properly before this court for review. *Smith v. NCCI, Inc.*, 369 S.C. 236, 256, 631 S.E.2d 268, 279 (Ct.App.2006) ("Only issues raised and ruled upon by the [Appellate Panel] are cognizable on appeal."); *see also Creech v. Ducane Co.*, 320 S.C. 559, 467 S.E.2d 114 (Ct.App. 1995) ("[O]nly issues within the application for review are preserved for the full commission."). Additionally, Appellants do not present any supporting case law for their theory. Therefore, we decline to address this issue on the merits.

### III. Error in Calculating Claimant's Average Weekly Wage

Employer and Carrier argue the circuit court erred in affirming the Appellate Panel's determination that Claimant was entitled to the maximum compensation rate for 2002. Additionally, Appellants maintain the Appellate Panel failed to consider Claimant's actual earnings as reported for tax purposes and failed to calculate his average weekly wage according to the method required by section 42–1–40 of the South Carolina Code.[4] We disagree.

Section 42–1–40 provides:

for the exact loss due to his incapacity to work. Assuming they are correct in their assertion, Appellants argue they should be entitled to a credit of the difference between what was actually awarded and $576.92.

4. Employer and Carrier also mention the living arrangement issue in this section. We have already affirmed the portions of the order that

> "Average weekly wage" must be calculated by taking the total wages paid for the last four quarters immediately preceding the quarter in which the injury occurred as reported on the Employment Security Commission's Employer Contribution Reports divided by fifty-two *or by the actual number of weeks for which wages were paid, whichever is less.*

(emphasis added). Here, the single commissioner determined Claimant earned $27,500 in 2001, and then divided $27,500 by forty-eight, the actual number of weeks Bazen paid Claimant wages, rather than fifty-two. In 2001, Claimant took a one-month vacation to Israel during which time he did not receive compensation. Therefore, Claimant essentially received $27,500 in actual earnings for 2001 rather than $30,000. Thus, Appellants argue the single commissioner should have divided $27,500, by fifty-two in calculating Claimant's average weekly wage to reflect the vacation time. However, because the above mentioned statute requires the average weekly wage be based on the "actual number of weeks for which wages were paid," we find there was no error in the calculation of Claimant's average weekly wage.

Accordingly, we affirm the circuit court's decision to affirm the Appellate Panel's calculation of Claimant's average weekly wage pursuant to section 42–1–40 of the South Carolina Code.

## CONCLUSION

We believe the record contains substantial evidence that Claimant's rent-free living situation was part of his oral employment contract. Further, we do not believe Claimant's double recovery issue is preserved for our review. Finally, we do not believe there was any error in the calculation of Claimant's average weekly wage pursuant to section 42–1–40 of the South Carolina Code. Therefore, the circuit court's decision is

**AFFIRMED.**

WILLIAMS and PIEPER, JJ., concur.

---

concern Claimant's rental income as part of his average weekly wage. Therefore, we do not need to revisit this issue here.