715 S.E.2d 339

**Raquel MARTINEZ, Employee, Respondent,**

v.

**SPARTANBURG COUNTY and S.C. Association of Counties Self–Insurance Fund, Carrier, Appellants.**

No. 4839.

Court of Appeals of South Carolina.

Submitted Jan. 4, 2011.

Decided June 15, 2011.

Rehearing Denied Oct. 6, 2011.

Richard B. Kale, Jr., of Greenville, for Appellants.

Chadwick Dean Pye, of Spartanburg, and Kevin B. Smith, of Charleston, for Respondent.

WILLIAMS, J.

In this workers' compensation appeal, Spartanburg County and South Carolina Association of Counties Self–Insurance Fund (Spartanburg County) contend the circuit court erred in concluding the Workers' Compensation Commissioner's (Single Commissioner) order was insufficient to enable appellate

review. Further, to the extent the order was sufficient, the circuit court erred in finding Raquel Martinez (Martinez) experienced an "unusual or extraordinary" condition in the course of employment to warrant finding Martinez suffered a compensable mental injury. We agree and reverse.[1]

## FACTS

Martinez, a twenty-eight year law enforcement veteran, was employed as a master deputy forensic investigator with the Spartanburg County Sheriff's Office. As a forensic investigator, Martinez' job description included reporting to crime scenes, collecting evidence, and taking photographs of crime scenes. Additionally, Martinez came into contact with deceased bodies, attended autopsies, and processed fingerprints and other forensic evidence.

On April 4, 2005, Martinez was called to perform a forensic accident investigation involving the death of a child in Greer, South Carolina.[2] At this point, Martinez only knew a child was killed, and the accident involved a former employee of the Spartanburg County Sheriff's Office. When Martinez arrived at the scene, she was informed that Anthony Johnson, a Greenville County Deputy Sheriff and a former officer with the Spartanburg County Sheriff's Office, accidentally killed his two-year-old daughter while backing his patrol car out of his driveway.

As part of Martinez' standard forensic investigation, she took measurements of the child's body and photographed the front lawn of the house, the child's body, the location of the patrol car, the interior of the house, and the undercarriage of the patrol car. Martinez testified all of these tasks were part of her ordinary job.

Approximately four months after the accident investigation, Ramon Martinez, Martinez' father (Father), received a phone call from Martinez' neighbor informing him that Martinez was

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. Although the accident occurred in Greer, South Carolina, the Spartanburg County Sheriff's Office conducted the forensic investigation because the Greer Police Department did not have a forensic unit.

"going up and down in the front yard, and she[ ][was] talking weird." After arriving at Martinez' house, Father was unable to locate Martinez and discovered her car windshield was "smashed to pieces," and her house was in a state of disarray. Father discovered Martinez in some nearby bushes. At this point, Martinez wanted Father to meet an imaginary "little girl" that she was going to take on a trip. Martinez was admitted to Spartanburg Regional Medical Center and was diagnosed with delirium related to Benzodiazepine withdrawal symptoms after she abruptly stopped taking Xanax. Martinez continued to receive psychiatric and psychological treatment in 2005 and 2006.

Martinez subsequently filed a Form 50 claiming she experienced a mental breakdown as a result of the April 4, 2005 investigation. During the hearing before the Single Commissioner, Martinez indicated she had worked approximately one-hundred to one-hundred and fifty death calls, investigated "a couple dozen" crime scenes involving suspicious deaths, witnessed autopsies, and viewed burnt bodies at fire scenes as a forensic investigator. However, Martinez testified she never investigated a scene when a fellow officer was involved with the death of his own child, and she never investigated a violent crime when she knew the parties. Martinez further testified, "[She and Anthony Johnson] were not best friends. [But] [w]e were friends, and we were associates, and it's a police officer." After conducting the investigation, Martinez stated she cried about the child on the same night of the accident investigation and experienced nightmares.

Captain Stephen Denton, a twenty-year law enforcement veteran, testified the April 4, 2005 accident investigation ranked emotionally as the worst investigation in his career. In addition, he stated this accident was not ordinary because of Anthony Johnson's prior affiliation with the Spartanburg County Sheriff's Office. Moreover, Captain Denton indicated he noticed a change in Martinez' demeanor on the date of the accident. Specifically, Captain Denton stated,

I can't imagine anybody that was present at the scene felt too good, you know, for days to follow. You don't understand that unless you've seen it, and so it's very hard for someone else to judge that, that had not seen it. However, given a reasonable amount of time to recuperate from

something like that—and I don't know what reasonable is, but within a week, week and a half, I could see that, you know, obviously, she was depressed, and within [a couple] three weeks, it showed in her work, in her habits.

Nonetheless, Captain Denton stated Martinez was fulfilling her ordinary job duties when she took photographs and measurements of the scene and moved the child's body. He also stated the Spartanburg County Sheriff's Office does not have a procedure that prohibits employees from working scenes involving victims they know.

The Single Commissioner concluded the April 4, 2005 investigation was not an "unusual or extraordinary" condition of Martinez' employment. The Single Commissioner also found Martinez failed to prove the April 4, 2005 investigation was the proximate cause of her mental breakdown. The Workers' Compensation Commission Appellate Panel (Appellate Panel) adopted the Single Commissioner's findings of fact and affirmed the Single Commissioner's order in its entirety. On appeal, the circuit court reversed and remanded the decision of the Appellate Panel. The circuit court concluded the Single Commissioner's order was not sufficiently detailed to enable appellate review, and was left to speculate whether the proper analysis was applied by the Single Commissioner. The circuit court also concluded even if the Single Commissioner's findings were appropriate, the findings focused on the ordinary aspects of Martinez' job and not whether Martinez' work was unusual compared to her particular employment. The circuit court further concluded the Single Commissioner's order was deficient as a matter of law on the issue of proximate cause, and the only conclusion that could be drawn from the evidence was that the April 4, 2005 investigation proximately caused her mental breakdown. This appeal followed.

## STANDARD OF REVIEW

The Administrative Procedures Act establishes the standard of review for decisions by the South Carolina Workers' Compensation Commission. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). The Commission is the ultimate fact finder in workers' compensation cases and is not bound by the Single Commissioner's findings of fact. *Ether-*

*edge v. Monsanto Co.*, 349 S.C. 451, 454, 562 S.E.2d 679, 681 (Ct.App.2002). The findings of the commission are presumed correct and will be set aside only if unsupported by substantial evidence. *Lark*, 276 S.C. at 135, 276 S.E.2d at 306.

## LAW/ANALYSIS

### A. Sufficiency of the Order

■ As an initial matter, Spartanburg County contends the circuit court erred in concluding the Single Commissioner's order was not sufficiently detailed to enable appellate review. We agree.

■ The findings of fact made by the Appellate Panel must be sufficiently detailed to enable the reviewing court to determine whether the evidence supports the findings. *Frame v. Resort Serv. Inc.*, 357 S.C. 520, 531, 593 S.E.2d 491, 497 (Ct.App.2004). "Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." S.C.Code Ann. § 1–23–350 (2005).

The circuit court's order stated,

In his Order, the Single Commissioner made three Findings of Fact which were relevant to the decision. Finding of Fact 14 was "investigating the death of a child, even the child of a former Sheriff's deputy, was not an unusual or extraordinary condition of Claimant's employment"; [Finding of Fact] 15 was Claimant failed to prove she encountered an unusual or extraordinary condition in her employment on April 4, 2005; and [Finding of Fact] 16 was Claimant failed to prove the accident investigation of April 4, 2005 was the proximate cause of her mental breakdown. The Single Commissioner gave no basis for his factual conclusion in Finding of Fact 14, and as to Findings of Fact 15 and 16, he simply stated to each of these two Findings of Fact that "[T]his finding is based on all the evident [sic] in the record."

. . .

Here, even though the orders from the Commission give a summary of some of the testimony presented during the hearing, no basis for the Finding[s] of Fact 14, 15, and 16 is

provided and, thus, this Court is left to speculate if the proper analysis was applied by the Commission and whether the factual conclusions upon which the law was applied has a substantial basis in the record. [footnote omitted] When an administrative agency acts without first making proper factual findings as required by law, the proper procedure is to remand the case and allow the agency the opportunity to make these findings. [citation omitted]

The circuit court's order only emphasizes Findings of Fact 14, 15, and 16 as relevant to the Single Commissioner's decision. However, the Single Commissioner's order provides seventeen pages of evidence, sixteen findings of fact, and conclusions of law to support its decision. Additionally, the circuit court ignored other findings of fact the Single Commissioner discussed on the issue of whether Martinez experienced an "unusual or extraordinary" condition in her particular employment. These findings of fact provide a sufficient basis to allow appellate review. Specifically, the Single Commissioner's order provides,

Finding of Fact 5

Claimant had been to an investigation previously while working for the Greenville County Sheriff's Department in which a child's head had been run over by a dump truck. Claimant testified that the accident did not bother her. She stated that if that type of situation bothered her, she would have never chosen to be a forensic investigator.

Finding of Fact 6

Claimant had investigated and worked up approximately 100–150 death cases in her 3–4 years as a forensic investigator. She had also investigated approximately 24 suspicious death/homicide cases and participated in approximately 24–26 autopsies. These investigations were a usual and ordinary part of her job. Claimant also testified about an investigation of an automobile accident in which an injured teenager had died in her arms.

Finding of Fact 7

When Claimant went to a crime scene, she would take up to 100 photographs and move the body to investigate anything underneath the body. She also took measurements and put

up barriers to prevent people from seeing the accident scene. This was a part of her usual and ordinary job. Finding of Fact 10

CPT Steve Denton testified that the accident scene of the child's death on April 4, 2005 was a terrible sight but that Claimant was doing her ordinary job that day in investigating the death of the child. CPT Denton required the Claimant to stay and perform the accident investigation because that was her job. The fact that the death scene involved the death of a child of a former Spartanburg County Deputy Sheriff did not remove the situation from being a part of her regular job.

Finding of Fact 11

Spartanburg County Sheriff's Office had no rule prohibiting its employees from going to accident scenes where they knew the victim. CPT Denton testified that he had always maintained and still maintained that no matter who the victim was, the Sheriff's Department investigators were required to work the accident scene.

The foregoing findings of fact from the Single Commissioner's order were sufficient to enable appellate review, such that the underlying reasons supporting the Single Commissioner's conclusion were not left to speculation. Consequently, we find the circuit court erred in concluding the Single Commissioner's order was deficient in this regard.

### B. "Unusual or Extraordinary" Condition of Employment

Spartanburg County contends the circuit court erred in concluding Martinez experienced an "unusual or extraordinary" condition in her particular employment. We agree.

Mental or nervous disorders are compensable provided the emotional stimuli or stressors are incident to or arise from "unusual or extraordinary" conditions of employment. *Doe v. S.C. Dep't of Disabilities & Special Needs*, 377 S.C. 346, 349, 660 S.E.2d 260, 262 (2008). The requirement of "unusual or extraordinary" conditions in employment, for a claimant to recover for a "mental-mental" injury refers to conditions of the particular job in which the injury occurs, not to conditions of employment in general. *Frame*, 357 S.C. at

529, 593 S.E.2d at 496. To recover for mental injuries caused solely by emotional stress, or "mental-mental" injuries, the claimant must show she was exposed to unusual and extraordinary conditions in her employment and these unusual and extraordinary conditions were the proximate cause of her mental disorder. *Tennant v. Beaufort Cnty. Sch. Dist.*, 381 S.C. 617, 621, 674 S.E.2d 488, 490 (2009).

The Single Commissioner found Martinez did not experience an "unusual or extraordinary" condition in her employment on April 4, 2005 because Martinez took photographs and measurements of the investigation scene and moved the child's body. Additionally, the Single Commissioner noted Martinez witnessed autopsies, previously investigated twenty-four suspicious death/homicide cases, and worked approximately one-hundred to one-hundred and fifty death cases. The Single Commissioner also noted the Spartanburg County Sheriff's Office did not have a rule prohibiting its employees from investigating scenes in which they knew the victim. Martinez does not dispute her job duties during the April 4, 2005 investigation were within her ordinary employment. However, Martinez contends the April 4, 2005 investigation was an "unusual or extraordinary" condition of her employment because the child's father, Anthony Johnson, was a former co-worker at the Spartanburg County Sheriff's Office.

While we empathize with the undoubtedly difficult nature of Martinez' job, we find Martinez' argument unpersuasive. Despite the tragic nature of the accident, the Single Commissioner found that based on Martinez' testimony, Martinez and Anthony Johnson's friendship was not such a close degree as to render the investigation an unusual and extraordinary condition of employment. Specifically, the Single Commissioner stated in Finding of Fact 4:

Claimant contended that working the death case of a child who was run over by a fellow police officer was unusual and extraordinary. She stated that police officers have a "special bond." However, Claimant was not a close friend of the fellow officer, Anthony Johnson, although she worked on the same shift, and they would occasionally see each other at shift changes. She did not personally know the officer's

wife or child, had never visited their home, and had never socialized with Anthony Johnson or his family.

Moreover, Captain Denton testified about the Spartanburg County Sheriff Office's procedure regarding investigations of victims that are acquainted with employees. Specifically, Captain Denton stated that, while in hindsight it may not have been the best protocol, he always required detectives to investigate incidents regardless of their relationship with the victims.[3]

Based on the evidence in the record, we conclude there is substantial evidence to support the Single Commissioner's finding that Martinez did not suffer an "unusual or extraordinary" condition of her particular employment. *Taylor v. S.C. Dep't of Motor Vehicles*, 368 S.C. 33, 36, 627 S.E.2d 751, 752 (Ct.App.2006) (stating substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence that, considering the record as a whole, would allow reasonable minds to reach the conclusion the administrative agency reached in order to justify its action).

Because we reverse the circuit court and conclude there is substantial evidence that Martinez did not suffer an "unusual or extraordinary" condition in her particular employment, we need not address the issue of proximate cause. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when a decision on a prior issue is dispositive).

## CONCLUSION

Accordingly, the circuit court's decision is

## REVERSED.

---

**3.** Martinez did not know Anthony Johnson's daughter. Therefore, the lack of a personal relationship is additional evidence that Martinez did not experience an "unusual or extraordinary condition" on April 4, 2005 because the Spartanburg County Sheriff's Office policy specifically contemplates employees investigating scenes in which they are acquainted with the victim.

SHORT, J., concurs.

FEW, C.J., concurs in a separate opinion.

FEW, C.J., concurring.

I concur in the portion of the majority opinion addressing the sufficiency of the commission's order. I also agree with the majority that the circuit court erred in reversing the commission. I write separately to address what I believe is the basis of the circuit court's ruling that Investigator Martinez' employment conditions were extraordinary and unusual. The circuit court did not rule on the basis of a lack of substantial evidence supporting the commission's factual finding. Rather, the circuit court reversed the commission on a question of law, finding the commission "failed to conduct the proper analysis." I also write to explain that the circuit court erred in reversing the commission's finding of a lack of proximate cause.

## A. "Unusual or Extraordinary" Conditions of Employment

The circuit court reversed the commission's determination that Investigator Martinez' stressful employment conditions were not extraordinary and unusual based on a point of law, not based on the sufficiency of the evidence. In the introductory section of the order, before even describing the facts, the circuit court stated "the decision of this Court is that the Order from the Full Commission should be reversed because the analysis ... is flawed by misapplying, *as a matter of law,* the 'unusual or extraordinary conditions of employment' test for determining compensability of mental injuries." (emphasis added). The circuit court made several other statements that it was ruling on a point of law and ultimately concluded: "The Commission's Order in the present case is void of [the analysis required by *Doe v. SCDDSN*[4]] and, therefore, as a matter of law, is reversed." The circuit court never mentioned the substantial evidence standard nor even attempted to explain that the evidence was not sufficient to support the commission's decision. As Appellant stated in its brief, "the Circuit

---

4. *Doe v. S.C. Dep't of Disabilities & Special Needs,* 377 S.C. 346, 660 S.E.2d 260 (2008).

Court never addressed the Commission's findings of fact and never determined whether the findings were supported by substantial evidence." Rather, the circuit court ruled that the commission committed a legal error in its analysis of whether Investigator Martinez' conditions of employment were extraordinary and unusual.

The circuit court erred in reversing the commission on this point of law. Its ruling is based on a misapplication of the reasoning of *Doe* to the facts of this case. The only aspect of Investigator Martinez' employment conditions alleged to be extraordinary and unusual is the nature and character of the April 4, 2005 investigation. Otherwise, there is no suggestion that she encountered anything extraordinary or unusual in her work. Specifically, Investigator Martinez does not allege any change in her employment conditions over the long term.

*Doe*, on the other hand, was based on a change in the claimant's long-term employment conditions. The claimant in *Doe* was employed by the South Carolina Department of Disabilities and Special Needs as a licensed practical nurse. 377 S.C. at 348, 660 S.E.2d at 261. After she worked there for approximately eighteen years, the Department began to make changes in the operation of her facility, resulting in a dramatic increase in the level of noise and violence in her unit. *Id.*

> As a result [of the changes], the patient population in Claimant's unit changed from being a passive group to a mixed group of passive and aggressive patients. The record indicates Claimant's unit went from being "a fairly pleasant unit to work in" to being "kind of a dumping ground" where none of the other nurses wanted to work.

*Id.* The supreme court found that the conditions of the claimant's employment were extraordinary and unusual as a result of the changes at her facility. The supreme court discounted the fact that many of the individual incidents in the claimant's new environment were the same as before and focused on what was different about the new environment. The court stated:

> The record indicates that in the spring of 1997, with the new mix of passive and aggressive patients in Claimant's unit, behavior problems escalated because of the "domino effect" created when an aggressive patient acted out.

Claimant had never before worked with a mix of passive and aggressive patients. No other unit had a mix of passive and aggressive patients. In fact, Department made changes after a DHEC survey criticized Department for housing diverse patients together.

377 S.C. at 350, 660 S.E.2d at 262.

The supreme court faulted the commission and the court of appeals for focusing on the fact that nurses had always dealt with aggressive patients and had even been injured by them before. *Id.* Thus, the supreme court rejected an analysis of similarities in individual incidents and focused instead on the differences caused by changes in long-term conditions. *Id.* ("A review of the record, however, indicates that the testimony [of similarities in individual incidents] relied upon is taken completely out of context and does not support the Court of Appeals' conclusion."). Focusing on the changes in overall, long-term employment conditions, the supreme court noted that neither of the two witnesses relied on by the court of appeals testified "that it was usual for a nurse to deal with a *mix* of passive and aggressive patients." 377 S.C. at 350–51, 660 S.E.2d at 262 (emphasis added). The supreme court found the overall, long-term changes in employment conditions resulting in a "mix of passive and aggressive patients" was an extraordinary and unusual condition of employment which caused the claimant's mental-mental injury and instructed the commission to award benefits. 377 S.C. at 351–52, 660 S.E.2d at 262–63.

Here, the commission applied the proper test for determining whether Investigator Martinez' conditions of employment were extraordinary and unusual. *See Shealy v. Aiken Cnty.,* 341 S.C. 448, 459, 535 S.E.2d 438, 444 (2000) (holding the standard to be applied is whether the conditions of employment were extraordinary or unusual compared to the normal conditions of claimant's employment); *see also Doe,* 377 S.C. at 349–50, 660 S.E.2d at 262 (discussing *Shealy* ). The commission described some of the investigations which "were a usual and ordinary part of [Investigator Martinez'] job." Those investigations included one "in which a child's head had been run over by a dump truck" and "an automobile accident in which an injured teenager had died in her arms." The majority described other similar investigations conducted by

Investigator Martinez. Describing how she conducted investigations such as those, the commission made this factual finding:

7. When claimant went to a crime scene, she would take up to 100 photographs and move the body to investigate anything underneath the body. She also took measurements and put up barriers to prevent people from seeing the accident scene. This was a part of her usual and ordinary job.

The commission then focused on whether what she did on April 4, 2005, was extraordinary and unusual compared to her usual and ordinary job and made this factual finding:

10. [Captain] Steve Denton testified that the accident scene of the child's death on April 4, 2005 was a terrible sight but that Claimant was doing her ordinary job that day in investigating the death of the child. [Captain] Denton required the Claimant to stay and perform the accident investigation because that was her job. The fact that the death scene involved the death of a child of a former Spartanburg County Deputy Sheriff did not remove the situation from being a part of her regular job.

In *Doe,* the supreme court ruled that despite the similarities in individual incidents, there were changes in the overall, long-term conditions of the claimant's employment, making the conditions which caused the injury extraordinary and unusual. 377 S.C. at 349–50, 660 S.E.2d at 262. Here, Investigator Martinez does not argue that there were any long-term changes. Rather, she argues that her mental-mental injury arose out of a single investigation. When she finished this particular investigation, she continued working on the same type of cases in the same manner as before. Had she been switched to an overall pattern of investigating only particularly traumatic cases, then perhaps the reasoning of *Doe* would apply. Under these facts, however, it does not.

Finally, I emphasize that one particular event in a claimant's work environment can constitute extraordinary and unusual conditions such that any resulting mental-mental injury would be compensable. *See, e.g., Powell v. Vulcan Materials Co.,* 299 S.C. 325, 326, 384 S.E.2d 725, 725 (1989) (affirming commission's award of benefits where claimant suffered "men-

tal, emotional, and psychological injury" following a single-incident verbal altercation with a supervisor). In such a case, however, whether the individual event meets the test for extraordinary and unusual set forth by the supreme court in *Shealy* is a question of fact for the commission to decide. On appeal from the commission's decision, if substantial evidence supports it, an appellate court must affirm. *Forrest v. A.S. Price Mech.*, 373 S.C. 303, 306, 644 S.E.2d 784, 785–86 (Ct. App.2007). In this case, the circuit court never ruled as to whether substantial evidence supports the commission's decision that Investigator Martinez' conditions of employment were not extraordinary and unusual. As the majority has explained, the commission's decision is supported by substantial evidence.

## B. Proximate Cause

The circuit court also reversed the commission's finding of a lack of proximate cause. The circuit court stated:

[T]he Commission's finding [as to proximate cause] is clearly erroneous, applying the substantial evidence standard of review, because the only conclusion that can be drawn from the medical information is that there exists the necessary showing of proximate cause to link the accident investigation of her friend's child's death and her mental breakdown.

In making this statement, the circuit court ignored the following findings of fact made by the commission:

8. Claimant had other stressors in April 2005 that were not work related, including the death from AIDS of her ex-husband's cousin with whom she was very close. Claimant was treated for anxiety, insomnia, and depression from these non-work related situational stressors including medications and hospitalization.

9. Claimant did not mention the investigation involving the death of a child on April 4, 2005 until approximately four months later after being hospitalized for an emotional breakdown.

16. Claimant failed to prove that the accident investigation on April 4, 2005 was the proximate cause of her mental breakdown, said finding being based on all the evidence in the record.

The record contains ample evidence to support these findings. For example, on April 19, 2005, two weeks after Investigator Martinez' investigation into the death of her fellow officer's child, she went to her family doctor for stress. In the medical note for that visit, the doctor wrote:

> She is very upset and crying. A very close friend and relative, a cousin with whom she was very close over the years, passed away yesterday. She is very upset about it. They were very close ever since they were little kids. She is very upset that she did not get to the hospital in time to say goodbye before he passed away.

Investigator Martinez returned to her family doctor on eight occasions between April 25 and June 24, 2005, and did not mention stress from the April 4 investigation even once. On August 7, 2005, Investigator Martinez was admitted to Spartanburg Regional Medical Center for "behavior suggesting psychiatric problems." Her treating psychiatrist diagnosed her with Benzodiazepine withdrawal delirium, depression, and anxiety disorder. In the discharge summary on August 9, 2005, the psychiatrist stated: "The patient apparently had recent problems with uncontrollable hypertension and also had problems with anxiety, insomnia and depression related to the death of her best friend who apparently was a male cousin." Martinez was admitted to the Carolina Center for Behavioral Health for a psychiatric evaluation on August 10, 2005. One of the forms filled out for this admission contains a section entitled "Precipitating Events," in which it is noted that Martinez stated: "My cousin died mid April 2005 and I took Xanax for my nerves. I stopped taking Xanax 1–2 weeks ago and became psychotic."

These medical records contain no mention of the April 4, 2005 investigation or any other job-related stress. In light of these facts, the commission's determination that the claimant failed to prove proximate cause is supported by substantial evidence. The circuit court erred in reversing the finding.