564 S.E.2d 694

**Jarrod SELLERS, Employee, Claimant, Respondent,**

**v.**

**PINEDALE RESIDENTIAL CENTER, Employer, and Hartford Accident & Indemnity, Carrier, Appellants.**

**No. 3508.**

Court of Appeals of South Carolina.

Heard Jan. 10, 2002.

Decided June 3, 2002.

184

Samuel T. Brunson, of Florence, for appellants.

Hugo M. Spitz, David T. Pearlman and J. Kevin Holmes, of Charleston, for respondent.

HUFF, Judge:

Pinedale Residential Center and Hartford Accident & Indemnity (collectively "Employer") appeal the order of the Workers' Compensation Commission adjusting Jarrod Sellers' average weekly wage and compensation rate based on his future earning capacity. We affirm.

## *FACTS*

Sellers suffered an admitted injury by accident on December 12, 1992, when he was involved in an automobile accident while working for Employer. At the time of the accident, Sellers was sixteen years old and a high school student. As a result of the accident, Sellers suffered injuries to his spine and spinal cord which rendered him a paraplegic.

On March 15, 1993, Sellers signed a Form 15, which estimated his average weekly wage at $100.00 and his compensation rate at the minimum compensation rate of $75.00 pending further determination by the Commission. Subsequently, on March 29, 1993, Ninkie Mack, a claims examiner with the Workers' Compensation Commission calculated Sellers' average weekly wage from his employment at Bojangles to be $40.74. On April 7, 1993, Mack calculated Sellers' average weekly wage from his employment with Employer to be $92.24 resulting in a combined average weekly wage from both part-time jobs of $132.98, giving Sellers a combined compensation rate of $88.66.

On April 13, 1993, Sellers filed a Form 50 Request for a Hearing alleging that Employer had failed to pay the proper compensation rate and Sellers' average weekly wage had not been calculated. On May 11, 1993, Employer filed a Form 51, Employer's Answer to Request for a Hearing, denying that Sellers' average weekly wage had not been properly calculated. On May 15, 1993, Sellers filed an Amended Form 50 also alleging that he was entitled to home renovations to accommodate his paraplegia.

The hearing of these matters was set for August 2, 1993. The parties appeared on that date and agreed to a continuance. Sellers also submitted additional wage information from another part-time job with Winn–Dixie Supermarket. On September 21, 1993, Mack calculated Sellers' average weekly wage based on all three jobs Sellers had held during the year prior to his accident and found the average weekly wage to be $136.55 with a compensation rate of $91.04. Subsequent to this determination, Sellers signed another Form 15 Agreement for Compensation providing for a compensation rate of $91.04.

A hearing was held on Sellers' Form 50 and Employer's Form 51 on February 1, 1994. In his order, from which no

appeal was taken, the single commissioner noted that "[t]he matters as to the Claimant[']s weekly compensation benefits have been resolved." The only issue before the single commissioner was that of renovations to Sellers' home.

In May of 1997, Sellers filed an additional Form 50 alleging that exceptional reasons existed warranting an adjustment of his average weekly wage and compensation rate to reflect the probable future wages he would be earning but for his injuries. In response, Employer filed a Form 51 contending that Sellers' compensation rate had been properly calculated and pleading res judicata, collateral estoppel, laches and the statute of limitations as affirmative defenses.

The single commissioner heard this matter in November of 1997. He rejected Employer's arguments that Sellers' claim for an adjustment to his compensation rate was barred by the statute of limitations, res judicata, estoppel or laches. The commissioner issued an order adjusting Sellers' average weekly wage and compensation rate based on his future earning capacity as an apprentice, journeyman, and master electrician. He provided for compensation on the following graduated scale: from July 1, 1994 to December 31, 1994 compensation at the rate of $148.87; from January 1, 1995 to June 30, 1995 compensation at the rate of $182.75; from July 1, 1995 to December 31, 1995 compensation at the rate of $184.09; from January 1, 1996 to June 30, 1996 compensation at the rate of $220.11; from July 1, 1996 to December 30, 1996 compensation at the rate of $235.31; from January 1, 1997 to June 30, 1997 compensation at the rate of $249.99; from July 1, 1997 to December 31, 1997 compensation at the rate of $264.66; from January 1, 1998 to June 30, 1998 compensation at the rate of $292.67; from July 1, 1998 to June 30, 2002 compensation at the rate of $294.01; and after June 20, 2002, compensation at the maximum rate for the year 1992 at $379.82 continuing until further order of the commission.

Employer appealed this order to the full commission. On June 8, 1998, the full commission affirmed the single commissioner with the exception of the single commissioner's above ruling with regard to future earning capacity. The full commission held there is no legal basis for speculation as to the future earning capacity of Sellers. It then calculated Sellers'

average weekly wage based on a forty-hour work week, which he most likely would have worked had he not been a full time student. The full commission further found that Sellers was earning $4.35 per hour at the time of his accident and calculated his average weekly wage at $174.00 with a compensation rate of $116.00.

Both parties appealed the full commission's decision to the circuit court. The Honorable Paul Burch reversed the full commission and remanded the case to the full commission. Employer appealed this order to the Supreme Court. That appeal was assigned to this court. By order dated September 24, 1999, this court dismissed the appeal without prejudice so that the matter could go to the full commission as ordered by Judge Burch.

On remand, the full commission reinstated the findings and decision of the single commissioner. Employer appealed to the circuit court. The Honorable Howard King found that he did not have the authority to review the order of Judge Burch and, therefore, affirmed the order of the full commission without prejudice to Employer's right to seek appellate review. This appeal followed.

## STANDARD OF REVIEW

In reviewing a decision of the Workers'· Compensation Commission, this court will not set aside its findings unless they are not supported by substantial evidence or they are controlled by error of law. *See Lark v. Bi–Lo,* 276 S.C. 130, 276 S.E.2d 304 (1981); *Lyles v. Quantum Chem. Co.,* 315 S.C. 440, 434 S.E.2d 292 (Ct.App.1993); S.C.Code Ann. § 1–23–380(A)(6) (Supp.2001). Substantial evidence is evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion that the full commission reached. *Lark,* 276 S.C. at 135, 276 S.E.2d at 306. The possibility of drawing two inconsistent conclusions from the evidence does not prevent the commission's findings from being supported by substantial evidence. *Tiller v. National Health Care Ctr.,* 334 S.C. 333, 513 S.E.2d 843 (1999).

## LAW/ANALYSIS

Employer contends that the commission and the circuit court erred in finding Sellers' request for an adjustment of his

average weekly wage and compensation rate to reflect his probable future wages was not barred by the doctrines of res judicata and/or collateral estoppel.[1] We disagree.

South Carolina Code Annotated § 42-17-10 (1985) provides in pertinent part:

All such agreements shall be subject to adjustment and correction as to the compensable rate if subsequent to filing with the Commission it is determined that such rate does not reflect the correct average weekly wage of the claimant. If approved by the Commission, the memorandum shall for all purposes be enforceable by a court's decree as specified in this title.

The commission promulgated a regulation preserving the right of either the claimant or the employer to seek an adjustment of a temporary total compensation rate. This regulation, in effect at the time of Sellers' injury, provided:

A. The temporary total compensation rate recorded on a Form 15 or temporary partial compensation rate on a Form 16 entered into consent is subject to adjustment and correction.

B. If it is determined that the compensation rate does not reflect the claimant's correct average weekly wage, the employer's representative may prepare an amended form reflecting the correct compensation rate. . . .

C. If the employer's representative does not agree as in section B above, the claimant may request a hearing. . . .

S.C.Code Ann. Regs. 67-508 (1990) (repealed 21 S.C. Reg. No. 6, pt. 2, eff. June 27, 1997).

 Regulation 67-508 clearly authorizes an adjustment in Sellers' temporary total compensation rate as set forth in the Form 15. The commission found Sellers' average weekly wage and temporary total compensation rate have not been previously adjudicated in this claim. Although a hearing was scheduled on this issue to be heard before the single commis-

---

1. Employer also argues in its statement of the issues that the adjustment of the average weekly wage and compensation rate is barred by the doctrine of laches. However, it does not argue this issue. Accordingly, the argument is abandoned. *See First Sav. Bank v. McLean,* 314 S.C. 361, 444 S.E.2d 513 (1994) (issues not argued in the brief are deemed abandoned and will not be considered on appeal).

sioner on August 2, 1993, the hearing was continued. The parties then resolved the issue and Sellers signed another Form 15. The only issue before the single commissioner at the reconvened hearing was that of the renovations to Sellers' home. We agree with the Commission that Sellers' average weekly wage and temporary total compensation rate have never been adjudicated. Accordingly, we find the doctrines of res judicata and collateral estoppel do not bar an adjustment.

Employer argues there is no statutory authority for the Commission to adjust Sellers' wages to provide for progressively higher wages based upon probable future earnings. It asserts the average weekly wage must be based upon prior earnings. We disagree.

South Carolina Code Annotated § 42–1–40 sets forth several different methods for calculating the average weekly wage.[2] In the second paragraph of the statute, the legislature recognized that these methods of calculation may not always be adequate. Accordingly, the statute provides:

When for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will

---

2. At the time of Sellers' injury, this section provided,

"Average weekly wages" means the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury ... divided by fifty-two. If the injured employee lost more than seven consecutive calendar days at one or more times during such period, although not in the same week, then the earnings for the remainder of such fifty-two weeks shall be divided by the number of weeks remaining after the time so lost has been deducted. When the employment prior to the injury extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, so long as results fair and just to both parties will be obtained. Where, by reason of shortness of time during which the employee has been in the employment of his employer or the casual nature and terms of his employment, it is impracticable to compute the average weekly wages as defined in this section, regard is to be had to the average weekly amount which during the fifty-two weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community. S.C.Code Ann. § 42–1–40 (1985) (revised 1996 Act No. 424, § 1, eff. June 18, 1996).

most nearly approximate the amount which the injured employee would be earning were it not for the injury. S.C.Code Ann. § 42–1–40 (1985).

 The statute provides an elasticity or flexibility with a view toward always achieving the ultimate objective of reflecting fairly a claimant's probable future earning loss. *Bennett v. Gary Smith Builders*, 271 S.C. 94, 98, 245 S.E.2d 129, 131 (1978). "The objective of wage calculation is to arrive at a fair approximation of the claimant's probable future earning capacity. His disability reaches into the future, not the past; his loss as a result of injury must be thought of in terms of its impact on probable future earnings." *Id.* at 98–99, 245 S.E.2d at 131; *see Stokes v. First Nat'l Bank*, 306 S.C. 46, 410 S.E.2d 248 (1991) (upholding an award where an employee's future earning capacity was one of the factors the commissioner in deciding upon an award).

 The full commission committed an error of law in its original order when it held there was no legal basis for speculating as to the future earning capacity of the claimant. In its amended order, the full commission adopted the single commissioner's order finding exceptional circumstance. Sellers' age and the extent of his injury warrant this finding. The commission was clearly authorized to consider Sellers' probable future earning capacity in determining an average weekly wage that is "nearly approximate the amount which [Sellers] would be earning were it not for the injury."

Employer also argues that the commission should not have considered any evidence of Sellers' future earnings because it was too speculative. We disagree.

As the commission found, "[b]ut for the severe injury, [Sellers] clearly demonstrated the interest, aptitude, and ability to become an electrician." At the time of his injury, Sellers was a full-time student and was working several part-time jobs. He had worked with his father, who is an electrician, since he was twelve years old. After the accident, he graduated from high school. He attended technical college for two semesters but was unable to complete his studies due to a lack a concentration caused by his head injury. Sellers testified that his career plan before the accident was to become an electrician like his father and uncles. He stated his goal was

to become a master electrician. Larry Bellamy, Sellers' father's former employer, testified that Sellers would accompany his father to work and help. He stated, "Sellers was very energetic. He wanted to learn, unlike most kids these days. He had a very determined approach that he wanted to learn the electrical trade, and follow pretty much and do the same thing his dad was doing."

The Commission based the pay scale on the testimony of a vocational expert. Employer offered no evidence to contradict this testimony.

We find substantial evidence in the record to support the commission's determination that Sellers most probably would have been earning and was thus entitled to a compensation rate of an electrician were it not for his spinal cord injury.

**AFFIRMED.**

CONNOR and HOWARD, JJ., concur.