713 S.E.2d 340

**Phillip Danny TIMS, Respondent,**

v.

**J.D. KITTS CONSTRUCTION, Employer, and Schbsif, Appellants.**

No. 4840.

Court of Appeals of South Carolina.

Submitted May 1, 2011.

Decided June 15, 2011.

498

Weston Adams, III and Helen F. Hiser, both of Columbia, for Appellants.

John S. Nichols and Blake A. Hewitt, both of Columbia; and Gary W. Poliakoff and Raymond P. Mullman, Jr., both of Spartanburg, for Respondent.

GEATHERS, J.

In this workers' compensation case, J.D. Kitts Construction (Employer) and the South Carolina Home Builders Self–Insured Fund (Carrier) (collectively Appellants) seek review of the circuit court's order affirming a decision of the South Carolina Workers' Compensation Commission (Commission). The Commission's decision required Appellants to pay medical expenses incurred by Phillip Tims (Claimant) related to heatstroke he suffered while in the care of a home health worker provided by Appellants. We affirm.

## FACTS/PROCEDURAL HISTORY

Appellants began paying medical benefits and lifetime indemnity benefits to Claimant in 2006 after he fell from a twelve-foot scaffold at work and sustained a spinal cord injury resulting in quadriplegia. Claimant stayed at Greenville Memorial Hospital for approximately five weeks and at a rehabili-

tation facility for the next three months. He then began living in the home of his former wife, Patricia Holcombe (Mrs. Holcombe), and Appellants began providing home healthcare services as prescribed by Claimant's treating physician. After using other home healthcare providers for Claimant, Appellants insisted on using HomeWatch Caregivers of Greenville (HomeWatch).

On June 9, 2007, when the outside temperature approached a hundred degrees, a HomeWatch caregiver, Dana Earle, took Claimant on an outing to Wal–Mart at his request. While there, Earle realized she had lost her car keys and left Claimant in the back seat of her unair-conditioned car while she went to look for them. By the time Earle returned with Claimant to Mrs. Holcombe's home, Claimant was unconscious.

Claimant was taken to Greenville Memorial Hospital, where he was diagnosed as being in a coma due to heatstroke.[1] He came out of the coma approximately one week later, but then lapsed back into a coma. At the time of the hearing before the single commissioner, Claimant had come out of his coma but was still at the hospital, on a ventilator and unable to speak, and had incurred some brain damage.

Claimant sought medical benefits related to his heatstroke, and Appellants denied this claim. The single commissioner ordered Appellants to pay these benefits, and the Appellate Panel affirmed the order. The Appellate Panel found that Claimant's heatstroke was a natural consequence of his original work-related injury—his quadriplegia—because it prevented him from extricating himself from his caregiver's overheated car. The circuit court affirmed the Appellate Panel's order to pay the benefits.[2] This appeal followed.

---

1. Two days after being admitted to the hospital, a blood test indicated that Claimant had been exposed to cocaine sometime within ten days prior to the test. However, the attending physician at the hospital determined that the most likely cause of Claimant's condition on the day in question was heatstroke, "plus or minus infection."

2. The circuit court disagreed with the Appellate Panel's conclusion that section 42–15–70 of the South Carolina Code (1985) provides additional support for the claim. Although Claimant has not included this issue in his Statement of Issues on Appeal, he appears to raise it as an additional sustaining ground in a footnote. We decline to reach this issue as it is

### ISSUES ON APPEAL

I. Did the Appellate Panel commit an error of law in concluding that Claimant's heatstroke was within the compensable range of foreseeable consequences of his original work-related injury?

II. Was the Appellate Panel's finding of fact that Claimant's heatstroke was a natural consequence of his original work-related injury supported by substantial evidence in the record?

### STANDARD OF REVIEW

 The South Carolina Administrative Procedures Act establishes the standard for judicial review of decisions by the Appellate Panel of the Workers' Compensation Commission. *See Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981). Specifically, section 1–23–380 of the South Carolina Code (Supp.2010) provides that this court may not substitute its judgment for that of the Appellate Panel as to the weight of the evidence on questions of fact, but may reverse when the decision is affected by an error of law.[3] *See Hamilton v. Bob Bennett Ford*, 336 S.C. 72, 76, 518 S.E.2d 599, 600–01 (Ct.App. 1999), *modified on other grounds*, 339 S.C. 68, 528 S.E.2d 667

---

unnecessary for our disposition of this appeal. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) (holding that it is within the appellate court's discretion whether to address any additional sustaining grounds); *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating that the appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

3. The pertinent language of section 1–23–380 is as follows:

The court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) affected by other error of law; (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

(2000), (interpreting § 1–23–380). Section 1–23–380 allows reversal of a factual finding of the Appellate Panel only if it is "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."

> In workers' compensation cases, the Commission is the ultimate factfinder. This Court must affirm the findings of fact made by the [Appellate Panel] if they are supported by substantial evidence. Substantial evidence is not a mere scintilla of evidence, but evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached.

*Pierre v. Seaside Farms, Inc.*, 386 S.C. 534, 540, 689 S.E.2d 615, 618 (2010) (citations and internal quotations marks omitted).

In reviewing workers' compensation decisions, the appellate court ascertains "whether the circuit court properly determined whether the [A]ppellate [P]anel's findings of fact are supported by substantial evidence in the record and whether the [P]anel's decision is affected by an error of law." *Baxter v. Martin Bros.*, 368 S.C. 510, 513, 630 S.E.2d 42, 43 (2006) (citations omitted).[4]

The appellate court is prohibited from overturning findings of fact by the Appellate Panel unless there is no reasonable probability the facts could be as related by the witness upon whose testimony the finding was based. *Liberty Mut. Ins. Co. v. S.C. Second Injury Fund*, 363 S.C. 612, 621, 611 S.E.2d 297, 301 (Ct.App.2005). The Appellate Panel's factual findings will normally be upheld; however, such a finding may not be based upon surmise, conjecture, or speculation, but must be founded on evidence of sufficient substance to afford a reasonable basis for it. *Sharpe v. Case Produce Co.*, 329 S.C. 534, 543, 495 S.E.2d 790, 794 (Ct.App.1997), *rev'd on other grounds*, 336 S.C. 154, 519 S.E.2d 102 (1999).

---

4. The South Carolina General Assembly has since changed the review procedure for workers' compensation matters to eliminate review by the circuit court, but the change does not affect the procedure applicable to this case. *See* S.C.Code Ann. § 1–23–380 (Supp.2010) (regarding judicial review of administrative decisions); *id.* § 42–17–60 (concerning appeals of Commission awards).

## LAW/ANALYSIS

### I. *Error of Law*

Appellants assert that the Appellate Panel committed an error of law in concluding that Claimant's heatstroke was within the range of compensable consequences of his original work-related injury. Appellants argue two independent, intervening causes of Claimant's heatstroke broke the chain of legal causation: [5] (1) Claimant's "unreasonable" decision to ride in his caregiver's car without air-conditioning on an extremely hot day, and (2) the caregiver's negligent or criminal behavior in allowing Claimant to become overheated. We will address each of these arguments in turn.

### A. *Claimant's Decision*

Appellants contend that Claimant's decision to ride in his caretaker's unair-conditioned car on a very hot day was unreasonable, and, thus the decision constituted an independent, intervening act that was unforeseeable. We disagree.

Every natural consequence that flows from a work-related compensable injury is also compensable unless the consequence is the result of an independent, intervening cause sufficient to break the chain of causation. *Whitfield v. Daniel Constr. Co.*, 226 S.C. 37, 40–41, 83 S.E.2d 460, 462 (1954); *see also* 1 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 10.01, 10–1 (2010) (stating that when the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that

---

5. To establish that an injury is a natural consequence of a work-related compensable injury, the Claimant must show that the work-related injury proximately caused the second injury. *See Mullinax v. Winn–Dixie Stores, Inc.*, 318 S.C. 431, 437, 458 S.E.2d 76, 80 (Ct.App.1995) (holding that as long as a causal connection is present, the compensability of the subsequent condition is beyond question).

Proximate cause requires proof of both causation in fact and legal cause. Causation in fact is proved by establishing the plaintiff's injury would not have occurred "but for" the defendant's action. Legal cause is proved by establishing foreseeability. Legal cause is ordinarily a question of fact.... Only when the evidence is susceptible to only one inference does it become a matter of law for the court. *Mellen v. Lane*, 377 S.C. 261, 278–79, 659 S.E.2d 236, 245–46 (Ct.App. 2008) (citations and internal quotation marks omitted).

flows from the injury likewise arises out of the employment, unless it is the result of an independent, intervening cause attributable to the claimant's own intentional conduct).

> Our courts have clearly held the natural consequences flowing from a compensable injury, absent an independent intervening cause, are compensable.... [N]ew injuries resulting indirectly from treatment for the original injury are also compensable.... [C]ircumstantial evidence may be used to prove causation. The causal sequence ... may be more indirect or complex, but as long as the causal connection is in fact present the compensability of the subsequent condition is beyond question.

*Mullinax,* 318 S.C. at 436–37, 458 S.E.2d at 79–80 (citations and internal quotation marks omitted).

In the present case, the court must determine whether the "accident"—becoming trapped in an overheated car—was caused by Claimant's original compensable injury—his quadriplegia. Appellants cite *Sanders v. Wal–Mart Stores, Inc.,* in support of their argument that Claimant's decision to ride in his caretaker's unair-conditioned car on a very hot day was an independent, intervening act that broke the chain of causation. 379 S.C. 554, 666 S.E.2d 297 (Ct.App.2008). We believe *Sanders* is distinguishable.

In *Sanders,* the claimant had suffered a compensable injury to her knee while descending a ladder at work. *Id.* at 557, 666 S.E.2d at 299. After the knee injury resolved, the claimant fell down a stairway in her home and again injured her knee. *Id.* The court determined that the claimant's fall down the stairway was not caused by her prior knee condition and the fall was an intervening act. *Id.* at 560–61, 666 S.E.2d at 300–01. Unlike the claimant's fall in *Sanders,* Claimant's compensable injury, quadriplegia, caused his heatstroke because it prevented him from extricating himself from an overheated car. Further, Claimant's quadriplegic condition continued up to, during, and after the accident for which he claimed compensation (becoming trapped in an overheated car and suffering heatstroke). In contrast, the claimant's original knee injury in *Sanders* had resolved over a year before her fall down the stairway. *Id.* at 557, 666 S.E.2d at 299.

Appellants also cite case law from other jurisdictions in support of their argument that Claimant's decision to ride in his caretaker's car was unreasonable.[6] However, the present case is distinguishable from the facts in the cited cases, most of which illustrate claimants' decisions to engage in certain conduct that would likely result in further injury. In those cases, the claimant was characterized as having full knowledge of the probable consequences of his actions. In the present case, Claimant's decision to ride in his caretaker's car cannot be characterized in this manner. He could not have predicted that his caretaker would leave him in the car while she went to look for a set of lost keys. Therefore, Claimant's decision was not unreasonable.

B. *Caregiver's Negligence*

■■■ Appellants also contend the caretaker's negligence was an independent, intervening act that was unforeseeable and thus broke the chain of causation. We disagree.

No statute or case in South Carolina specifically addresses injuries caused by the negligence of persons other than physicians who are connected with the process of treatment or convalescence.[7] However, other jurisdictions recognize that these injuries are "within the compensable range of consequences." Larson's § 10.09(3), 10–24 to –25. This includes orderlies, first aid personnel, physical therapists, and even hospital maintenance staff. *Id.*

Here, Claimant's physician had ordered the services of a home healthcare personal staffing company. Carrier engaged the services of Medical Services Company (MSC), a business

---

6. *See Allen v. Indus. Comm'n of Ariz.*, 124 Ariz. 173, 602 P.2d 841 (Ariz.App.Div.1979); *Amoco Chemical Corp. v. Hill*, 318 A.2d 614 (Del.Super.Ct.1974); *Johnnie's Produce Co. v. Benedict & Jordan*, 120 So.2d 12 (Fla.1960); *Sullivan v. B & A Constr., Inc.*, 307 N.Y. 161, 120 N.E.2d 694 (1954); *Sinclair Prairie Oil Co. v. State Indus. Comm'n*, 176 Okla. 84, 54 P.2d 348 (1936); *Anderson v. Westfield Grp.*, 259 S.W.3d 690 (Tenn.2008); *Jones v. Huey*, 210 Tenn. 162, 357 S.W.2d 47 (1962).

7. As to the negligence of physicians, section 42–15–70 of the South Carolina Code (1985) provides that the consequences of any "malpractice by a physician or surgeon furnished by [the employer]" shall be deemed part of the original work-related injury and shall be compensated for as such.

whose job was to locate and employ home healthcare companies. In June 2007, MSC hired HomeWatch to provide services to Claimant. Shortly before June 9, HomeWatch sent Earle to provide these services. Appellants maintain Earle was nothing more than a "babysitter" and she cannot be considered to have been providing "medical treatment" such that her negligence was a foreseeable consequence of Claimant's original work-related injury. We disagree.

The services provided by Earle were medically necessary for a quadriplegic who lived in a private home rather than in a fully-staffed residential treatment facility. Although the services by themselves may not have required any heightened degree of skill, they were connected with the process of treatment of a quadriplegic, and thus the negligent delivery of these services by Appellants' chosen caregiver was a foreseeable consequence of Claimant's condition. Several weeks before the day of the incident, one of Claimant's treating physicians made note of Claimant's psychological problems due to his "inability to get out of the house ... enough," and various physicians had recommended excursions for his emotional wellbeing. Therefore, the June 9 excursion was within the scope of Earle's care of Claimant.

Appellants also argue that Claimant's written care plan with HomeWatch did not include transportation services, and, therefore, it could not be considered part of his treatment. However, the restrictions of the written care plan did not render Earle's provision of transportation unforeseeable. It is foreseeable that a home health client may initially indicate no need for transportation but later request his caregiver to take him on an errand.

Appellants compare this case to a Florida case in which a pedestrian who previously suffered a work-related injury requiring him to use crutches was struck by a vehicle as he was crossing the street. *See D'Angelo Plastering Co. v. Isaac*, 393 So.2d 1066, 1068 (Fla.1980) (holding that the unknown driver's negligence was an independent, intervening cause of the claimant's injuries). However, Claimant was not injured by the negligence of an independent third party. Rather, he was injured by an act of his own caregiver, who was employed by the home health company chosen by Appellants. Injuries due

to the negligence of non-physicians connected with the process of treatment or convalescence are within the compensable range of consequences of the original work-related injury. Larson's § 10.09(3).

Based on the foregoing, the Appellate Panel properly concluded that neither Claimant's decision to ride in his caregiver's car nor his caregiver's negligence was an independent, intervening cause sufficient to break the chain of causation.

## II. *Substantial Evidence*

In addition to asserting an error of law on the part of the Appellate Panel, Appellants contend that substantial evidence did not support the Appellate Panel's finding of fact on causation, i.e., whether Claimant's heatstroke was caused by his quadriplegia. Appellants maintain that the only evidence supporting the Appellate Panel's version of the events was Mrs. Holcombe's account of what Earle had told her and that Mrs. Holcombe herself doubted the truth of Earle's account. We disagree.

"In workers' compensation cases, the [Appellate Panel] is the ultimate fact finder." *Shealy v. Aiken Cnty.*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). "The final determination of witness credibility and the weight to be accorded evidence is reserved to the [Appellate Panel]." *Id.* "It is not the task of this Court to weigh the evidence as found by the [Appellate Panel]." *Id.* Further, the trier of fact has the prerogative to believe one part of a witness's testimony while simultaneously disbelieving other parts of the same witness's testimony. *See Holcombe v. Dan River Mills*, 286 S.C. 223, 225, 333 S.E.2d 338, 340 (Ct.App.1985) ("The Commission in workers' compensation cases sits as a jury does. It is elementary that a jury may believe part or all of a witness's testimony[.]").

In fact, the appellate court is prohibited from overturning findings of fact of the Appellate Panel unless there is no reasonable probability the facts could be as related by the witness upon whose testimony the finding was based. *Liberty*, 363 S.C. at 621, 611 S.E.2d at 301. If the Appellate Panel's factual findings are founded on evidence of sufficient sub-

stance to afford a reasonable basis for them, they must be upheld. *Sharpe*, 329 S.C. at 543, 495 S.E.2d at 794.

 We believe there was a reasonable probability the key facts could be as related by Mrs. Holcombe's testimony concerning Earle's account of events, to which Appellants never objected.[8] Earle's version of the key events is consistent with the attending physician's assessment of Claimant's condition upon admission to the hospital. It is also consistent with Mrs. Holcombe's testimony that on the day before the incident, Claimant had asked Earle to take him to Wal–Mart. Notably, Mrs. Holcombe testified that she believed the part of Earle's account regarding losing her keys and leaving Claimant in an overheated car because it was consistent with the attending physician's diagnosis of heatstroke. Although Mrs. Holcombe wavered on this point during cross-examination, Earle's version of events had similarities to Mrs. Holcombe's deposition testimony regarding Claimant's version of the day's events. Claimant had indicated that Earle took him to Wal–Mart and left him in the car and he started feeling bad at that point. Appellants did not object to the introduction of any of this testimony.

Based on the foregoing, the evidence in the record would allow reasonable minds to reach the conclusion the Appellate Panel reached—that Claimant became trapped in his caregiver's overheated car and suffered from heatstroke because his quadriplegia prevented him from extricating himself from the car. Hence, the Appellate Panel's finding to this effect was supported by substantial evidence. *See Pierre*, 386 S.C. at 540, 689 S.E.2d at 618 ("Substantial evidence is not a mere scintilla

---

8. Although section 1–23–330(1) of the South Carolina Code (2005) provides that the South Carolina Rules of Evidence do not apply in workers' compensation proceedings, hearsay testimony is inadmissible in workers' compensation proceedings unless corroborated by facts, circumstances, or other evidence. *Hamilton v. Bob Bennett Ford*, 339 S.C. 68, 70, 528 S.E.2d 667, 668 (2000). At the hearing before the single commissioner, Appellants made no hearsay objections to Mrs. Holcombe's testimony regarding Earle's version of the events. In any event, as discussed above, Mrs. Holcombe's testimony about what Mrs. Earle told her was consistent with the medical testimony and with Claimant's statements to Mrs. Holcombe before and after the incident. Therefore, the challenged testimony is sufficiently reliable to constitute substantial evidence supporting the Appellate Panel's findings.

of evidence, but *evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion the agency reached.*") (citations and internal quotation marks omitted) (emphasis added).

## CONCLUSION

Accordingly, the circuit court's order is

**AFFIRMED.**

SHORT and KONDUROS, JJ., concur.