719 S.E.2d 676

**James PUGH, Appellant,**

v.

**PIEDMONT MECHANICAL and Zurich Insurance, Respondents.**

**No. 4896.**

Court of Appeals of South Carolina.

Heard Sept. 14, 2011.

Decided Oct. 19, 2011.

---

32

Emmette J. Saleeby, of Spartanburg, for Appellant.

Errol Anne Y. Hodges and Amanda L.C. Bradley, both of Columbia, for Respondents.

KONDUROS, J.

This is an appeal of a workers' compensation case arising from James Pugh's consolidated request for medical treatment for two injuries to his right knee. He contends the Appellate Panel of the South Carolina Workers' Compensation Commission (Appellate Panel) erred in failing to fairly and justly determine his average weekly wage and in ignoring the existence of exceptional circumstances, making it unfair to calculate his average weekly wage for his 2007 injury based on a seventeen-week period. Pugh also argues the Appellate Panel erred by failing to award temporary total disability for a three-month period.[1] We reverse and remand.

## FACTS

Pugh began working for Piedmont Mechanical in 1978 and by 2006 was earning eighteen dollars per hour as a certified pipefitter. He routinely worked forty hours per week with occasional overtime depending on the project to which he was assigned. On July 31, 2006, while working for Piedmont,

---

1. Pugh originally argued that if the court affirmed his issue regarding the average weekly wage, the award of twenty percent permanent partial disability to his right leg is an error as a matter of law because substantial evidence does not support the disability rating. This issue was resolved with Amerisure, and the appeal was withdrawn.

Pugh was carrying pipes when he stepped on a bottle, causing him to fall and suffer an injury to his right knee. The claim was admitted by Piedmont's carrier, Amerisure Mutual Insurance Company (Amerisure). Pugh was treated by Dr. John dePerczel, an orthopedist, and he underwent arthroscopic surgery and chondroplasty to his right knee.

Pugh was out of work for thirty weeks and paid temporary total disability benefits of $568.89 per week based on an average weekly wage of $853.28. Pugh's average weekly wage was calculated based on his earnings during the four quarters preceding the 2006 injury.

Dr. dePerczel determined Pugh reached maximum medical improvement for the 2006 injury on July 16, 2007, with a fifteen percent impairment rating to the right leg. The doctor assigned permanent work restrictions of (1) only occasional climbing or squatting and (2) no lifting over fifty pounds. Pugh returned to work for Piedmont in March 2007.

On October 19, 2007, Pugh reinjured his right knee getting off of a forklift at Piedmont. Pugh testified that while descending the forklift, he twisted his right knee and felt a pop, which caused severe pain and swelling to his right knee. Dr. dePerczel examined Pugh's knee and noted swelling, tenderness under the kneecap, and medial femoral condyle. Dr. dePerczel maintained the only option for permanent relief would be a total knee replacement. Dr. dePerczel, at this examination, placed Pugh on sedentary work.

Pugh lived about ninety minutes from Piedmont's office and felt commuting three to four hours every day from his home in Hickory, North Carolina to Piedmont's home office in Spartanburg, South Carolina was aggravating his right knee.[2] Pugh opted to stay out of work for a month without pay and workers' compensation benefits to see if his knee would improve with rest. Pugh's pain did not subside, and he returned to Dr. dePerczel on November 26, 2007. Dr. dePerczel recommended Pugh have a magnetic resonance imaging (MRI) to

---

2. Prior to the 2006 injury, Pugh worked remotely for Piedmont, requiring him to travel to Piedmont project sites throughout the country. Following his return to work in March 2007, Pugh performed light duty work in Piedmont's home office located in Spartanburg, South Carolina.

determine the amount of cartilage damage in the right knee. At this visit, Dr. dePerczel instructed Pugh to limit his work to sitting work only and not to drive more than one hour at a time. Pugh believed this limitation kept him from driving the ninety minutes to Piedmont's office.

Amerisure sought clarification of Dr. dePerczel's driving restrictions in January 2008. Dr. dePerczel determined Pugh could drive forty-five minutes to an hour followed by a fifteen to thirty minute break, which would then allow him to drive the remaining thirty to forty-five minutes to Piedmont. Following the clarification, Pugh was notified by letter that Piedmont was unable to provide Pugh with any sedentary work.

Between the 2006 injury and the 2007 injury, Piedmont changed its workers' compensation provider from Amerisure to Zurich American Insurance (Zurich). Neither carrier would approve Dr. dePerczel's order for an MRI, further medical treatment, or temporary total disability following the new work restrictions outlined by Dr. dePerczel.

Pugh requested a hearing to determine whether he had sustained a new on-the-job injury and a determination of which carrier would be responsible for his workers' compensation benefits following the second injury. The single commissioner entered his order June 11, 2009, and the Appellate Panel affirmed the order in pertinent part, finding (1) Pugh sustained a second injury with Piedmont Mechanical on October 19, 2007; (2) Zurich was responsible for the 2007 claim; (3) Pugh had reached maximum medical improvement for the 2006 injury; (4) the average weekly wage for the 2006 injury was $852.20 with a compensation rate of $568.89 per week; (5) Pugh sustained a permanent partial disability of twenty percent; and (6) the average weekly wage for the 2007 injury was $537.20 with a compensation rate of $358.15. Pugh's average weekly wage for the 2007 claim was calculated based on the seventeen-week period Pugh worked following his return to Piedmont after the 2006 injury. The Appellant Panel ordered Zurich to authorize a MRI of Pugh's right leg with the results to be reviewed by Dr. dePerczel to develop an appropriate treatment plan. This appeal followed.

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act establishes the substantial evidence standard for judicial review of decisions by the Appellate Panel. S.C.Code Ann. § 1–23–380 (Supp.2010); *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). Under the substantial evidence standard of review, this court may not "substitute its judgment for that of the [Appellate Panel] as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law." *Stone v. Traylor Bros.,* 360 S.C. 271, 274, 600 S.E.2d 551, 552 (Ct.App.2004). "Substantial evidence is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusions the administrative agency reached in order to justify its actions." *Broughton v. S. of the Border,* 336 S.C. 488, 495, 520 S.E.2d 634, 637 (Ct.App.1999). In workers' compensation cases, the Appellate Panel is the ultimate fact finder. *Shealy v. Aiken Cnty.,* 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). The Appellate Panel is reserved the task of assessing the credibility of the witnesses and the weight to be accorded evidence. *Id.*

## LAW/ANALYSIS

### I. Average Weekly Wage Calculation

The Appellate Panel calculated Pugh's average weekly wage for the 2007 injury as $537.20 based on the seventeen-week period Pugh worked prior to the injury. Pugh appeals this method of calculation, contending the Appellate Panel erred in failing to fairly and justly determine his average weekly wage and in ignoring the existence of exceptional reasons to justify a deviation from the Appellate Panel's chosen method of wage calculation. He argues the Appellate Panel should have calculated his wage by the alternative method of finding exceptional reasons to recognize his years of employment, earning capacity, and age because the calculation based on the seventeen-week period is a misleading snapshot of his average earnings.

The Workers' Compensation Act defines "average weekly wage" for the purposes of computing compensation and sets

forth a primary method of calculation and four alternative methods.[3] The primary method for calculating the average weekly wage is to take "the total wages paid for the last four quarters divided by fifty-two or by the actual number of weeks for which wages were paid, whichever is less." § 42–1–40; *Pilgrim v. Eaton*, 391 S.C. 38, 45, 703 S.E.2d 241, 244 (Ct.App. 2010). "The [Appellate Panel] must use this method unless 'the employment, prior to the injury, extended over a period of less than fifty-two weeks,' or unless 'for exceptional reasons' it would be unfair to do so." *Pilgrim*, 391 S.C. at 44–45, 703 S.E.2d at 244 (citing § 42–1–40).

In this case, Pugh had been working for less than four quarters since his return from the 2006 injury, thus the primary method of calculation was not appropriate. The Appellate Panel calculated Pugh's average weekly wage based on Zurich's Form 20 in which it "divided the annual salary by the actual number of weeks worked versus [fifty-two] weeks."

---

3. Section 42–1–40 of the South Carolina Code (Supp.2010) provides as follows:

"Average weekly wages" means the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of the injury, .... "Average weekly wage" must be calculated by taking the total wages paid for the last four quarters immediately preceding the quarter in which the injury occurred as reported on the Department of Employment and Workforce's Employer Contribution Reports divided by fifty-two or by the actual number of weeks for which wages were paid, whichever is less. When the employment, prior to the injury, extended over a period of less than fifty-two weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee earned wages shall be followed, *as long as results fair and just to both parties will be obtained.* Where, by reason of a shortness of time during which the employee has been in the employment of his employer or the casual nature or terms of his employment, it is impracticable to compute the average weekly wages as defined in this section, regard is to be had to the average weekly amount which during the fifty-two weeks previous to the injury was being earned by a person of the same grade and character employed in the same class of employment in the same locality or community.

When for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury.

(emphasis added).

When the Appellate Panel determines the primary method of calculation is not permissible, it is required to consider which of the alternative methods for calculating the average weekly wage is most appropriate based on the facts. *Id.* "Before the [Appellate Panel] may use any one of these alternatives, the [Appellate Panel] must find, or the record must clearly show, that the necessary conditions [, as prescribed in the statute,] exist." *Id.* The first alternative method of wage calculation, used by Zurich and adopted by the Appellate Panel's order, is proper if two "predicate conditions" exist: (1) it is "practicable" to use the alternative method and (2) the calculation yields a result "fair and just" to both parties. *Id.* at 46, 703 S.E.2d at 245.

We believe the Appellate Panel failed to satisfy the second predicate condition, therefore making the use of the first alternative method of calculation an error of law. The first condition of practicability is established both in the Appellate Panel's order and in the record based on Pugh working less than fifty-two weeks prior to his second injury. The second condition of fairness was not specifically addressed in the Appellate Panel's order, nor does the record reflect that the alternative method of calculation was a fair and just result for both Piedmont and Pugh, as statutorily required. This is particularly bothersome in light of the significant decrease in an average weekly wage for a thirty-year veteran of the company.

■ The record suggests a frequent fluctuation between projects and the hours available for employees to work depending on the projects Piedmont was undertaking. The natural variance in available work in this industry makes capturing the ebb and flow of work in a seventeen-week period difficult. The only evidence presented regarding Pugh's pay and hours worked was Pugh's testimony and the earnings outlined in Form 20. The prevailing goal and policy of section 42–1–40 is to use the method that will fairly compensate the employee "for reductions in their earning power caused by work-related injuries." *Stephenson v. Rice Servs., Inc.,* 323 S.C. 113, 116, 473 S.E.2d 699, 700 (1996). *See Foreman v. Jackson Minit Mkts., Inc.,* 265 S.C. 164, 170, 217 S.E.2d 214, 216–17 (1975). In this case, the Appellate Panel had the

ability to see an extended and continual work history and average earnings for a thirty-year period.

The Appellate Panel's chosen method of calculation resulting in a thirty-seven percent decrease in Pugh's average weekly wage for the 2007 injury is drastic and should have been directly addressed by the order to comply with the statutory obligation. The record alone does not properly establish the calculation provided a fair and just result. Therefore, we remand this issue to the Appellate Panel for the purpose of reconsidering and clarifying the method of calculation in light of the Appellate Panel's requirement to select a method of calculation that is fair and just to both parties. While we leave the selection of the alternative method of calculation to the Appellate Panel, we recognize section 42–1–40 has been interpreted to provide " 'an elasticity or flexibility with a view toward always achieving the ultimate objective of reflecting fairly a claimant's probable future earning loss.' " *Forrest v. A.S. Price Mech.*, 373 S.C. 303, 309, 644 S.E.2d 784, 787 (2007) (quoting *Sellers v. Pinedale Residential Ctr.*, 350 S.C. 183, 191, 564 S.E.2d 694, 698 (Ct.App.2002)).

## II. Temporary Total Disability

Pugh contends the Appellate Panel erred in failing to award temporary total disability benefits for the period from November 26, 2007, to February 29, 2008, because substantial evidence shows he is entitled to benefits during this period. Pugh specifically argues he is entitled to temporary total disability for the ten-week period from November 26, 2007, to February 4, 2008, because he was not informed until February 4, 2008, of Dr. dePerczel's clarification of his driving restrictions, which he had been following pursuant to the requirements of the Workers' Compensation Act. Additionally, he maintains he is entitled to temporary total disability for the three-and-a-half-week period between February 5, 2008, to February 28, 2008, because Piedmont was unable to arrange a sedentary job that complied with his work restrictions.

The Appellate Panel's order fails to make specific findings of fact on whether Pugh is entitled to temporary total disability during the thirteen-and-a-half-week period. Without specific findings upon the evidence regarding the material fact of

whether Pugh's understanding of the restrictions were warranted, this court cannot determine whether the general finding or conclusion was proper. *See Baldwin v. James River Corp.*, 304 S.C. 485, 486, 405 S.E.2d 421, 423 (Ct.App.1991). Thus, we remand this case to the Appellate Panel to make specific findings on Pugh's understanding of the restrictions and his entitlement to temporary total disability for the thirteen-and-a-half-week period.

## CONCLUSION

For the foregoing reasons, this case is reversed and remanded to the Appellate Panel for the purpose of amending its award in keeping with the views expressed herein.

**REVERSED and REMANDED.**

FEW, C.J., and THOMAS, J., concur.