736 S.E.2d 672

**Terry Scott SWILLING, Employee/Claimant, Respondent,**

v.

**PRIDE MASONRY OF GAFFNEY, Employer, and Central Mutual Insurance Company, Carrier, Appellants.**

Appellate Case No. 2011–199988

No. 5057.

Court of Appeals of South Carolina.

Heard Oct. 29, 2012.

Decided Nov. 28, 2012.

Duke K. McCall, Jr., of Smith Moore Leatherwood, LLP, of Greenville, for Appellants.

V. Laniel Chapman, of Chapman, Byrholdt & Yon, LLP, and Michael F. Mullinax, of Mullinax Law Firm, both of Anderson, for Respondent.

SHORT, J.

Terry Scott Swilling, Employee/Claimant, filed this workers' compensation action against Pride Masonry of Gaffney, Employer, and Central Mutual Insurance Company, Carrier (collectively, Pride). Pride appealed, arguing error in the following: (1) the calculation of Swilling's average weekly wage; (2) the finding of permanent and total disability (PTD); (3) the finding that a subsequent injury was proximately caused by a work-related injury; and (4) the award of a lump-sum payment. We affirm.

**FACTS**

On June 8, 2006, while employed as a stonemason for Pride, Swilling was injured as he operated a skid steer to build a cement block room on a construction site. Swilling twisted his left ankle when he stepped out of the skid steer and fell onto gravel. He also struck his head, left elbow, and back. Swilling severely injured his left leg, resulting in two surgeries and an epidural steroid block. Subsequently, he experienced se-

vere pain extending from his foot into his hip and back. This caused him to place more pressure on his right leg and resulted in an antalgic gait. Swilling filed a workers' compensation claim for PTD. He claimed an average weekly wage of $840, based on $21 per hour at forty hours per week, with a corresponding compensation rate of $560.03.

Pride admitted the injury but denied Swilling was entitled to PTD. Pride also contested Swilling's average weekly wage, alleging a weekly wage of $742.14 with a compensation rate of $494.79. Finally, Pride sought credit for overpayment of benefits because Swilling suffered two subsequent accidents: a June 2009 motorcycle accident and an April 2010 automobile accident.

At an August 2010 hearing before a single commissioner of the South Carolina Workers' Compensation Commission (the Commission), Swilling testified he has been in the masonry business his entire working life. He is married and has two children. Although he graduated from high school in 1981, he reads at a third-grade level and cannot write, but he can sign his name.

At the time of the hearing, Swilling testified he was still experiencing excruciating pain in his foot, whole leg, and back, and he wore a brace from his left ankle to his knee and another brace on his right leg. He continued to use narcotic pain medication. It made him sleepy and dizzy, which caused him to fall. He had attempted to discontinue its use, but he suffered severe pain without the medication. Swilling also suffered migraines and depression, and he was being treated by a psychiatrist. His sleep was disrupted due to pain, and he slept during the day in a sitting position. He admitted he suffered anxiety due to numerous break-ins at his house in 2008. Swilling also testified he attempted to return to work as a delivery driver, but he became sleepy and was afraid he would cause an accident. He worked between surgeries performing light-duty labor for Pride.

Swilling admitted he was injured in the 2009 motorcycle accident, but he explained it affected the upper right side of his body and did not exacerbate his left leg injury. He also testified the 2010 automobile accident resulted in four broken ribs, but it did not contribute to the disability caused by his

work-related accident. On cross-examination, Swilling disputed the medical records, which indicated he injured his back in the motorcycle and automobile accidents. Swilling also maintained an April 2010 fall was related to his work-related injury.

Pride admitted Swilling earned $21 per hour. Rather than file a claim with its carrier, Pride paid Swilling's medical bills until February 2010, when it began sending the bills to its insurance carrier. Pride paid Swilling a salary of $840 per week until March 2010, when Swilling could no longer work. The carrier did not make any payments.

The single commissioner found Swilling to be a credible witness. The commissioner also found although Pride was duly notified of the accident, it failed to report it to the Commission, and Swilling was paid $21 per hour for forty hours per week resulting in an average weekly wage of $840, which was the salary he was earning at the time of the accident. The commissioner found exceptional reasons existed to deviate from the Form 20, pursuant to section 42–1–40 of the South Carolina Code, and he found Swilling's average weekly wage to be $840 with a corresponding compensation rate of $560.03.

The commissioner also determined Swilling's injuries from the work-related accident alone, despite the subsequent motorcycle and automobile accidents, rendered him permanently and totally disabled. The commissioner ordered temporary total disability of $11,200.60 from March 2010 to the date of the hearing; reimbursement of medical bills; a lump-sum award of $228,657.84 for the remainder of Swilling's entitlement to five hundred weeks of compensation; and payment of future causally-related medical bills to his left leg, right leg, back, and psychological condition.

Pride filed a Form 30 Request for Commission Review. An appellate panel of the South Carolina Workers' Compensation Commission heard the matter. Other than amending the award to prorate the lump-sum award to minimize the reduction of Swilling's Social Security benefits pursuant to *James v. Anne's Inc.*, 390 S.C. 188, 701 S.E.2d 730 (2010), the Commission affirmed the single commissioner. Pride appealed, and the circuit court affirmed. This appeal followed.

## STANDARD OF REVIEW

The South Carolina Administrative Procedure Act (APA) governs appeals from the decisions of the Commission. S.C.Code Ann. § 1–23–380 (Supp.2011); *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). Under the scope of review established in the APA, this court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse or modify the Commission's decision if the appellant's substantial rights have been prejudiced because the decision is affected by an error of law or is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." S.C.Code Ann. § 1–23–380(5)(e) (Supp.2011). Our supreme court has defined substantial evidence as evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion that the Commission reached. *Lark,* 276 S.C. at 135, 276 S.E.2d at 306.

## LAW/ANALYSIS

### A. Average Weekly Wage

■ Pride argues the Commission erred in calculating Swilling's average weekly wage. We disagree.

According to Pride's Form 20, Swilling was hired on April 3, 2006, and his injury occurred on June 8, 2006. Swilling continued to work for several months until his first surgery. Until 2010, Swilling worked when he was able, performing light duty. He was paid $21 per hour for forty hours per week, totaling $840 per week. On the Form 20, Pride calculated Swilling's average weekly wage by claiming earnings of $28,943.50 over a period of thirty-nine working weeks for an average wage of $742.14 per week.

■ Section 42–1–40 of the South Carolina Code provides for the calculation of the average weekly wage. S.C.Code Ann. § 42–1–40 (Supp.2011). "The statute provides an elasticity or flexibility with a view toward always achieving the ultimate objective of reflecting fairly a claimant's probable future earning loss." *Sellers v. Pinedale Residential Ctr.,* 350 S.C. 183, 191, 564 S.E.2d 694, 698 (Ct.App.2002). "The objective of wage calculation is to arrive at a fair approximation of the claimant's probable future earning capacity." *Bennett v.*

*Gary Smith Builders,* 271 S.C. 94, 98–99, 245 S.E.2d 129, 131 (1978).

In *Pugh v. Piedmont Mechanical,* 396 S.C. 31, 38, 719 S.E.2d 676, 680 (Ct.App.2011), this court explained:

> The primary method for calculating the average weekly wage is to take "the total wages paid for the last four quarters divided by fifty-two or by the actual number of weeks for which wages were paid, whichever is less." § 42–1–40; *Pilgrim v. Eaton,* 391 S.C. 38, 45, 703 S.E.2d 241, 244 (Ct.App.2010). "The [Commission] must use this method unless 'the employment, prior to the injury, extended over a period of less than fifty-two weeks,' or unless 'for exceptional reasons' it would be unfair to do so." *Pilgrim,* 391 S.C. at 44–45, 703 S.E.2d at 244 (citing § 42–1–40).

"When for exceptional reasons the foregoing would be unfair, either to the employer or employee, such other method of computing average weekly wages may be resorted to as will most nearly approximate the amount which the injured employee would be earning were it not for the injury." § 42–1–40.

The Commission in *Pugh* calculated the claimant's average weekly wage for a 2007 injury based on the seventeen-week period he worked prior to the injury. *Pugh,* 396 S.C. at 37, 719 S.E.2d at 679–80. The primary method of calculating average weekly wages was not appropriate because the claimant had not worked the fifty-two weeks preceding the injury. *Id.* at 38, 719 S.E.2d at 680. Therefore, the Commission calculated the average weekly wage based on the employer's Form 20, which divided the salary paid by the actual number of weeks the claimant worked. *Id.* The *Pugh* court found when the Commission determines the primary method of calculation is not permissible, "it is required to consider which of the alternative methods for calculating the average weekly wage is most appropriate based on the facts." *Id.* at 39, 719 S.E.2d at 680. "Before the [C]ommission may use any one of these alternatives, the [C]ommission must find, or the record must clearly show, that the necessary conditions exist." *Pilgrim v. Eaton,* 391 S.C. 38, 45, 703 S.E.2d 241, 244 (Ct.App. 2010).

Pride argues the Commission should have calculated Swilling's average weekly wage based on the income he earned

over thirty-nine weeks. This is the method utilized by the Commission in *Pugh*, and it "is proper if two 'predicate conditions' exist: (1) it is 'practicable' to use the alternative method and (2) the calculation yields a result 'fair and just' to both parties." *Pugh*, 396 S.C. at 39, 719 S.E.2d at 680 (quoting *Pilgrim*, 391 S.C. at 46, 703 S.E.2d at 245).

In this case, the Commission adopted the single commissioner's order finding "pursuant to S.C.Code Ann. § 42–1–40, exceptional reasons exist[ed] to deviate from the Form 20." The Commission also found the following: (1) Pride paid Swilling his regular salary of $840 per week after the injury, which was substantiated by Swilling's W–2s and tax returns; (2) although Pride's payment could be deemed benevolent, its motive was questionable and appeared to be an attempt to avoid filing a claim with its insurance carrier; and (3) Pride ceased working only when he could no longer physically perform his duties. We find the Commission's use of the statutory language indicates it was cognizant of the requirement to show the "necessary conditions to deviate" existed. *See Pilgrim*, 391 S.C. at 45, 703 S.E.2d at 244 (requiring the Commission to find, or the record to clearly show, the necessary conditions to deviate exist before employing one of the alternative methods of calculating average weekly wage). We also find substantial evidence in the record supports the Commission's findings. *See Roberts v. McNair Law Firm*, 366 S.C. 50, 53–54, 619 S.E.2d 453, 455–56 (Ct.App.2005) (applying the substantial evidence standard of review to affirm the Commission's finding regarding whether the claimant was entitled to deviation from the statutory method of calculating average weekly wages).

## B. Partial and Total Disability

■ Pride next argues the Commission erred in finding Swilling suffered PTD. We disagree.

Swilling's vocational expert, Dr. Benson Hecker, opined that given Swilling's age, education, vocational background, lack of transferable skills, impairments, limitations, and chronic pain, Swilling was "not job ready" and was totally disabled. Dr. Robert A. Dameron, Jr., opined Swilling had a forty-eight percent impairment of the left lower extremity and an eleven

percent impairment of the spine. He also opined Swilling would require ongoing pain management treatment and psychological support. Dameron concluded "[i]t is unlikely [Swilling] will be able to return to gainful employment." Swilling's orthopaedic surgeon, Dr. George R. Bruce, concluded Swilling had a forty-seven percent left lower extremity impairment and a decreased range of motion, which combined for a sixty percent left lower extremity impairment and equaled a twenty-four percent whole person impairment. Swilling also received a ten percent mental/emotional impairment rating.

A claimant is entitled to a finding of PTD "[w]hen the incapacity for work resulting from an injury is total." S.C.Code Ann. § 42–9–10(A) (Supp.2011). Our supreme court explained PTD in *Stephenson v. Rice Services, Inc.,* 323 S.C. 113, 117–18, 473 S.E.2d 699, 701–02 (1996) (footnotes and final citation omitted):

> There are two situations in which the Commission can find a claimant totally disabled. First, for certain conditions resulting from work-related injuries, a claimant is *deemed* totally disabled and need not demonstrate loss of earning capacity to recover workers' compensation benefits. *See, e.g.,* S.C.Code Ann. § 42–9–10 (Supp.1994) (classifying loss of certain limbs and body parts as total disability as a matter of law; classifying as total disability paraplegia, quadriplegia, and physical brain damage resulting from compensable injuries).... Under the circumstances in which a worker is *deemed* totally disabled, the medical model of workers' compensation predominates.
>
> In contrast, the earning impairment model predominates when a worker is not statutorily *deemed* totally disabled. Under this model, the Commission may predicate a finding of total disability on the claimant's complete loss of earning capacity as a result of a work-related injury. *See* S.C.Code Ann. § 42–1–120 (1985) ("The term *'disability'* means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."); S.C.Code Ann. § 42–9–10 (Supp. 1994) ("When the incapacity for work resulting from an injury is total, the employer shall pay ... to the injured employee during the total disability...."); *Wynn v. Peoples Natural Gas Co.,* 238 S.C. 1, 118 S.E.2d 812 (1961). Em-

ployees who because of a work-related injury can perform only limited tasks for which no reasonably stable market exists are considered totally disabled notwithstanding their nominal earning capacity.

Thus, the economic model defines disability in terms of a claimant's loss of earning capacity, and the medical model defines disability based upon specific degrees of medical impairment to specified body parts. *Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 104, 580 S.E.2d 100, 102 (2003). "[T]he extent of disability is a question of fact to be proved as any other fact is proved." *Hanks v. Blair Mills, Inc.*, 286 S.C. 378, 384, 335 S.E.2d 91, 95 (Ct.App.1985). Findings of fact by the Commission are reviewed under the substantial evidence standard of review, and this court will not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981).

In its brief, Pride points to other medical evidence in the record indicating at least one of Swilling's physicians encouraged him to return to work, another described him as stable and able to walk without a brace, and an evaluation conducted in 2009 indicated Swilling was qualified to perform several types of employment. However, when the evidence is conflicting, the findings of the Commission are conclusive. *Hargrove v. Titan Textile Co.*, 360 S.C. 276, 290, 599 S.E.2d 604, 611 (Ct.App.2004). Accordingly, this court will not overturn a finding of fact by the Commission "unless there is no reasonable probability that the facts could be as related by a witness upon whose testimony the finding was based." *Lark*, 276 S.C. at 136, 276 S.E.2d at 307 (quoting *Indep. Stave Co. v. Fulton*, 251 Ark. 1086, 476 S.W.2d 792, 793 (1972)). We find there was substantial evidence to affirm the Commission's factual finding that Swilling's work-related injury caused PTD.

## C. Subsequent Injury

Pride next argues the Commission erred in finding Swilling's April 2010 fall was related to his work-related injury. We disagree.

In explaining his April 2010 fall, Swilling testified he fell from his back porch when his left leg "gave out" while he was

entering his house. He hit his head on a stepping stone and sought treatment at the emergency room. The Commission found the April 2010 accident was related to his leg and ordered Pride to reimburse the medical providers for all related treatment.

██ "Every natural consequence that flows from a work-related compensable injury is also compensable unless the consequence is the result of an independent, intervening cause sufficient to break the chain of causation." *Tims v. J.D. Kitts Constr.*, 393 S.C. 496, 504, 713 S.E.2d 340, 344 (Ct.App.2011) (citations omitted). We find substantial evidence to support the Commission's finding. *See Sanders v. Wal–Mart Stores, Inc.*, 379 S.C. 554, 559–62, 666 S.E.2d 297, 300–01 (Ct.App. 2008) (applying the substantial evidence standard of review to the Commission's determination of whether a subsequent fall was related to a previously compensable knee injury).

## D. Lump–Sum Payment

██ Pride finally argues the Commission erred in awarding Swilling a lump-sum payment. We disagree.

Swilling testified to financial distress caused by Pride's cessation of payments five months prior to the hearing before the single commissioner. He explained he was "close to losing [his] house," and he had to "get food stamps and beg for money" to support his family. Although Swilling is functionally illiterate, he is able to count money. Furthermore, a treating psychologist reported he manifested an average level of intellectual potential.

The single commissioner found Swilling's best interests would be served by the receipt of a lump-sum payment, and the award should be paid in a lump sum based upon the evidence and testimony presented. The Commission modified the award pursuant to *James v. Anne's Inc.*, 390 S.C. 188, 701 S.E.2d 730 (2010), to avoid any negative impact on Swilling's entitlement to Social Security benefits. *See id.* at 199–200, 701 S.E.2d at 736 ("The purpose of allocating a lump[-]sum disability award over the claimant's lifetime is to make sure a claimant is not being economically penalized by the Social Security Administration's calculation of an offset. The Social

Security Administration expressly recognizes and accepts such allocations as a matter of routine practice.").

Our legislature set forth a special standard for review of lump-sum awards as follows: "Upon a finding by the [C]ommission that a lump[-]sum payment should be made, the burden of proof as to the abuse of discretion in such finding shall be upon the employer or carrier in any appeal proceedings." S.C.Code Ann. § 42-9-301 (1985). Accordingly, our review of a lump-sum award is under the abuse of discretion standard, rather than the substantial evidence standard of review ordinarily employed in reviewing factual findings of the Commission. *Thompson v. S.C. Steel Erectors,* 369 S.C. 606, 612, 632 S.E.2d 874, 878 (Ct.App.2006). "An abuse of discretion occurs if the Commission's findings are wholly unsupported by the evidence or the conclusions reached are controlled by an error of law." *Id.*

The purpose of a workers' compensation award is to provide a substitute for the wages of the injured employee, and the ordinary payment of compensation is in installment payments. *Woods v. Sumter Stress–Crete, Inc.,* 266 S.C. 245, 247-48, 222 S.E.2d 760, 761 (1976). "In determining whether to award a lump[-]sum payment to a claimant, the Commission must consider whether the award will cause a hardship to the employer or carrier and whether the payment would be in the best interest of the claimant and his family." *Thompson,* 369 S.C. at 616, 632 S.E.2d at 880. In *Thompson,* this court affirmed a partial lump-sum award when the injured employee required funds to build a new house due to his work-related paraplegia, and there was no credible evidence the funds would be squandered. *Id.* at 616-17, 632 S.E.2d at 880. Likewise, this court summarily affirmed a lump-sum award when the claimant "demonstrated an ability to manage large sums of money in a prudent fashion" and testified he needed the funds to do major repair work to his house, which would be more costly if the repairs were not done in a timely fashion. *Cox v. Mills,* 286 S.C. 226, 227, 332 S.E.2d 562, 563 (Ct.App. 1985).

In this case, Swilling presented evidence the lump-sum award would be in his best interest. Furthermore, Pride offered no evidence of hardship arising from a lump-sum

award. Accordingly, we find no abuse of discretion by the Commission in awarding a lump sum.

## CONCLUSION

For the foregoing reasons, the circuit court's order is

**AFFIRMED.**

KONDUROS and LOCKEMY, JJ., concur.